BRADLEY v. DRAYTON.

1. TITLE—COMMON SOURCE—JURY—NONSUIT.—The question of title from common source is for the jury, and if there be any testimony on this point, nonsuit is improper.

2. *Title* relied on by plaintiff *held* not speculative.

3. TITLE—COMMON SOURCE—EVIDENCE—DOWER—JURY—CASES DISTINGUISHED.—The fact that a wife had renounced her right of dower on mortgage executed by her husband is competent to go to the jury to show common source in a suit between claimant of the land, through husband's mortgage, and the wife for possession. Buffinton *v.* Smith, 2 Brev., 98; Roach *v.* Davidson, 3 Brev., 80; Brown *v.* Shand, 2 M. Con. R., 12; Mayo *v.* Feaster, 2 McC. Ch., 137; Tibbetts *v.* Langley Mfg. Co., 12 S. C., 465. *Distinguished.*

4. CHARGE.—The charge as to length of time for adverse possession to ripen into title, *held* not to have been so stated as to confuse or mislead the jury.

5. CHARGE.—The Judge may state a legal proposition after the general charge, which had been overlooked in such charge.

6. IBID.—Portion of charge excepted to *held* not to be upon the facts.

Before BENET, J., Abbeville, October, 1895.   Affirmed.

Action by W. L. Bradley against Bettie Drayton for possession of a tract of land. The following is the charge of the Circuit Judge:

The plaintiff brings his action against the defendant to recover possession of a tract of land on which he alleges Bettie Drayton is now living and in possession of, and unlawfully withholding it from him; and he claims that he is the true owner of the land, and is entitled to possession. He claims that the fee-simple title is in him, and that she has no right to withhold possession from him. The complaint asks for damages, but I have just heard counsel say that he does not press that; therefore, you will not consider that, but only consider as to who is in possession of this tract of land. The defendant denies that Bradley has the fee-simple title in him. She alleges in her defense the grounds upon which the claim is set up, that in 1883 her husband gave a mortgage to G. A. Douglass, of Abbeville, for $50 upon this tract of land, and that mortgage came into possession of Mr. Wilkinson in 1891, and that then there was some agreement between her and Mr. Wilkinson and the boy about the hire of the boy, William Bradley, and she alleges that the boy's services, his wages, were to go as a credit on the mortgage debt, and that she also offered to pay the $23 still due after his wages; that that was the agreement; that she was ready to pay that, to pay off the debt, and that Mr. Wilkinson would not accept the $23, and that she still has an interest in the land. You have heard the testimony as to the various mortgages given by Lewis Drayton. You recollect that the G. A. Douglass mortgage contained a power of sale—that is, that the mortgagee had the right, after the conditions were broken, to advertise and sell without any proceedings in the court room; that is what is called a "Scotch mortgage," a self-foreclosing mortgage. Under that mortgage it seems that Mr. Wilkinson advertised the land for sale on salesday in December, 1893, and that at

that sale, December, 1893, Mr. Wilkinson, acting as attorney in fact for the plaintiff, Bradley, made a deed to himself, L. H. Wilkinson, dated 31st of March, 1894; and that on the 23d of April, 1894, Mr. Wilkinson again, as the grantee of the last deed, now becomes the grantor in the next deed, and makes a deed to Bradley; and Bradley says that under that deed he had a fee-simple title in him, and is now entitled to be put in possession of the land. I charge you that the plaintiff in all cases on the civil side of our courts, before he can recover a verdict, he must do so by a preponderance of the evidence on the issues involved; by which is meant that he must satisfy the minds of the jury by the greater weight of the testimony. The measure of proof is not as it is in the criminal court. A jury in the criminal court must be satisfied beyond a reasonable doubt before they can convict the defendant; but in this Court the jury must be satisfied that there is more evidence in the plaintiff's favor than against him, that there is heavier testimony, weighed in imaginary scales, in the plaintiff's favor, before he can recover. He must satisfy the jury by the greater weight of the testimony, and if the testimony fails, he has failed; and in a land case, if he recovers a verdict, he must recover only upon the strength of his own title, and not upon the weakness of the title of the defendant. In a case of this nature a defendant is not called upon to open his mouth; he may sit silent in Court and not say a word, and it is for the jury to say whether the plaintiff has established his case by the greater weight of the testimony. The silence of the defendant is not to work in favor of the plaintiff at all.

In a case of this character the plaintiff must establish, by the greater weight of the testimony, either that his title can be traced back to a grant from the State since the revolutionary war, or from the Crown before the revolution, and if that can be shown, he has given abundant proof that the title is in him. The law has directed that twenty years adverse possession presumes a grant, and that is, that if Bradley here traces to Lewis Drayton, and if Bettie Drayton

does not trace to him as a common source, then Bradley must satisfy you, by the preponderance of the evidence, that Lewis Drayton's possession was equal to a title traced back to a grant. Is it testified that he went into possession in the year 1872, and went out of possession in the year 1889? Is there any other testimony as to his possession in Lewis Drayton? If that is not proved, then aside from the common source the plaintiff could not recover on that; but if he can trace it back for twenty years from the time he went on the property and took possession of it, he can recover. But if Bettie Drayton, the defendant, also claims under Lewis Drayton, which means that both Bettie Drayton and William Bradley both claim back to Lewis Drayton, then it is not necessary to inquire how long Lewis Drayton held; but if they both claim from Lewis Drayton, which has the best title? If a common source is established by the testimony, that will relieve the jury of the necessity of going further back. You recollect that a motion for a nonsuit was made on the ground that it was not shown that there was a common source. I could not say then, as I do now, but I do say now that that is the question for you, for it seemed to me that there was some evidence on that point that they both claimed from Lewis Drayton. That is the question for you to decide. It is argued that Bradley traced from Lewis Drayton, but that Bettie Drayton did not. That is for you to decide. As I recollect the reading of the pleadings, she said she had an interest in the tract of land. She does not allege who she traces from at all. It is argued to you that she was living with Lewis Drayton during those years. It is for you to say whether Lewis Drayton or Bettie Drayton was the owner of the land. There are three mortgages put in evidence here, one to Douglass, one to Hill & Co., and one to Barnwell. Do those mortgages contain renunciations of dower by this woman, and if so, would that show that she considered this land to be in Lewis Drayton, and that she had a dower in it? That is for you to say, and you must be satisfied by the preponderance on that point

whether they trace from a common source or not. If they do not trace from a common source, then he cannot recover; but if traced from a common source, then you will ask the question, has he shown that he is entitled to recover on the strength of his own title as against her? You have heard the testimony as to how Mr. Wilkinson got possession of the land. Did he purchase the land at the sale made under the mortgage? Did he make title afterwards to Bradley? Did Bradley pay him afterwards by his wages and give him a note and mortgage for $23? Is the testimony of Bradley on the stand, that he was to get his money back if he did not recover the land, did that mean the title was a warranty deed, or that he was running the risk in court of getting the land, and if not, it would be no risk for him, that he would get his money back? The facts are in a small compass, and are all for you, gentlemen. The law I have endeavored to give to you. Counsel for the defendant, Bettie Drayton, has asked me to charge you the following, which I have already charged you, but I will charge it to you again:

I. That it is incumbent on the plaintiff to establish his title by the preponderance of the evidence, and he must recover, if at all, upon the strength of his own title, and not upon the weakness of the title of the defendant.

II. That in order for the plaintiff to recover, he must prove a grant from the State, or such a possession in Lewis Drayton as will presume a grant from the State, to wit: twenty years adverse possession. I have so charged you that that is the law. You will consider all of the testimony, and give what weight you think each witness' testimony is entitled to, and find a verdict as the facts will justify in your opinion. If you find for the defendant, say: "We find for the defendant." If you find for the plaintiff, you will say: "We find for the plaintiff the land in dispute."

Mr. Cason asked the Court to charge as to common source. The Court: Yes, sir; of course, if there is not a common source, the plaintiff must recover on the strength

of his own title. Mr. Cason asked the Court to charge as to adverse possession. The Court: That question of twenty years adverse possession is for you, gentlemen of the jury, and that is possession held against the world. If Lewis Drayton entered in possession in 1872, the law at that time was, that twenty years possession was necessary to prove adverse possession; but in 1873 the law was changed, making ten years adverse possession necessary to be proved. If you are satisfied from the testimony—not from any presumption of your own, but from the testimony—that the possession of Lewis Drayton in 1872, before the act was passed, twenty years would be sufficient; but if adverse possession did not commence until after 1873, then ten years adverse possession would be sufficient. Mr. Cason requested the Judge to charge the jury as follows: "If the jury believe that the plaintiff and defendant claim from Lewis Drayton, the plaintiff is entitled to the verdict if he shows the better title." The Court: That is what I have charged you before, gentlemen. If he has satisfied you, by the preponderance of the evidence, that he ought to recover by the strength of his title—not by the weakness of hers but by the strength of his own title—he should recover. But if he does not recover by the strength of his own title, he cannot recover on the weakness of the defendant's title.

Judgment for plaintiff. Defendant appeals.

*Messrs. Graydon & Graydon*, for appellant, cite: *Common source of title:* Mills, 240; 2 McC., 137; 3 Brev., 80; 2 Brev., 97; 12 S. C., 465. *Court must construe writing:* 6 S. C., 351; 24 S. C., 493. *Charge:* 9 S. C., 281; 36 S. C., 479.

*Mr. Samuel C. Cason*, contra, cites: *Title from common source:* 29 S. C., 376. *Possession, question for jury:* 30 S. C., 235 and 291.

Feb. 6, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.  The plaintiff brought this action to recover possession of certain real estate, alleging that he was seized in fee, and entitled to the immediate possession thereof, which was unlawfully withheld from him by the defendant.  In her answer, the defendant denies each and every allegation in the complaint, except the allegation that she is in possession of the said real estate; and for a defense to the whole cause of action, she alleges that the plaintiff's "pretended" title to the tract of land described in the complaint is derived as follows: On the 7th of March, 1883, one Lewis Drayton executed a mortgage on said land to one G. A. Douglas, which, by successive transfers, came into the hands of one L. H. Wilkinson; that soon thereafter defendant entered into an agreement with said Wilkinson for the hire of the plaintiff, who was then a minor, under the control of defendant, with the understanding that the wages of plaintiff should be allowed as a credit on the mortgage debt, and that, after crediting the amount of said wages on the mortgage debt, there remained a balance due thereon of $23, which sum the defendant alleges she tendered to said Wilkinson, in satisfaction of the mortgage. Defendant also alleges that she "had an interest in the said tract of land at the time of said tender, and had the right to make the same;" but what was the nature of that interest, or whence derived, is not disclosed either by the pleadings or the evidence.

The plaintiff offered testimony tending to show that Lewis Drayton went into possession of the land in dispute "about 1872," and remained in possession, using and claiming the land as his own, until the year 1889, when he left the premises; but what became of him, or whether he is still living, does not appear.  While Lewis Drayton was in possession of the land, living there with his wife, the defendant in this action, he executed three mortgages on the land: the one to Douglas, above referred to; another to Hill & Co.; and another to Barnwell; upon all of which his said wife renounced her dower in the usual form.

When Lewis Drayton left the premises in dispute, in 1889, the defendant, his wife, continued to live there until after this action was commenced. It seems, from the testimony, that at one time there was an arrangement between the plaintiff and the defendant, whereby they were to pay up the mortgage debt in equal proportions, and then divide the land equally between them; but owing to the failure of the defendant to pay up her portion of the mortgage debt, this arrangement fell through; and thereupon the plaintiff made another agreement with the said L. H. Wilkinson, who, at the request of plaintiff, had taken up the mortgages, whereby the plaintiff hired himself to the said Wilkinson, with the understanding that his wages were to be applied to the mortgage debt. In accordance with this agreement, Wilkinson did pay up the mortgage debts, had the mortgages assigned to him, and, under the power of sale contained in the Douglas mortgage, the land was sold and bought by Wilkinson, who subsequently conveyed the same to the plaintiff, who, by his wages, paid up all of the mortgage debt, except a balance of $23, which was secured by another mortgage on the land. There was not only no testimony to sustain the allegation in defendant's answer as to the arrangement which she claims to have made with Wilkinson to take up the mortgage with the wages of the plaintiff, and as to the alleged tender by her to Wilkinson of the balance due on the mortgage debt, after applying plaintiff's wages thereto; but, on the contrary, the testimony was directly the reverse of such allegation; for Wilkinson testified that he never made any such arrangement with defendant, and denies that she ever made any tender of the said balance. The plaintiff, in his testimony, does say, that the defendant made a small payment of $11 on the Douglas mortgage, but when, or to whom, such payment was made does not appear. It is proper, also, to add, that there was no testimony tending to show that the defendant ever sustained any such relation to the plaintiff as would entitle her to claim his wages while he was a minor; but, on the

16—48

contrary, the testimony was that, while the plaintiff's father was dead, his mother was still living.

At the close of the plaintiff's testimony the defendant moved for a nonsuit, but upon what grounds such motion was based the "Case" does not disclose.  The motion was refused, on what ground does not appear, except from a remark subsequently made by the Circuit Judge in his charge to the jury, which will hereinafter be adverted to.  The defendant offered no testimony, and the case went to the jury under the charge of the Circuit Judge, a copy of which is set out in the "Case," which, for a full and correct understanding of the points presented by this appeal, should be incorporated in the report of this case.  The jury found a verdict for the plaintiff, and from the judgment entered thereon the defendant appeals upon the several grounds set out in the record, which we will proceed to consider.

The first and fifth grounds impute error to the Circuit Judge in refusing the motion for a nonsuit, and may, therefore, be considered together.  The first exception is stated in the following language: "Because his Honor erred in refusing to grant a nonsuit on defendant's motion, the evidence introduced by the plaintiff having failed to show either that the plaintiff had traced his title back to a grant or to such length of possession in Lewis Drayton as would presume a grant, or to show that both parties claim through a common source of title."  In the first place, we may observe that, in considering a motion for a nonsuit, the question is not whether the evidence is sufficient to show any one or more of the facts material to the issue in the case, but the question is whether there is *any* testimony tending to show such facts.  But, waiving this, and assuming that the appellant intended to state this exception in proper form, we will proceed to consider the exception under that assumption.  It manifestly assumes that the motion for a nonsuit was based upon two grounds: 1st. That there was no testimony tending to show a grant to Lewis Drayton or such a length of possession by him as

would justify the presumption of such a grant. 2d. That there was no testimony tending to show that both parties claimed through a common source of title. As to the first ground, it does not appear in the "Case," as we have said, that the motion for a nonsuit was based upon any such ground, but, on the contrary, it would seem from the remarks made by the Circuit Judge in his charge to the jury, that the motion was refused because his Honor thought there was some evidence tending to show that both parties claimed from a common source. But, aside from this, it is quite clear that there was no error in refusing the motion for a nonsuit unless both grounds could be sustained; for, even conceding that there was no testimony tending to show a grant to Lewis Drayton, and no testimony tending to show such a length of possession by him as would authorize the presumption of such a grant, still the nonsuit could not properly have been granted if there was any testimony tending to show that both parties claimed from a common source of title; for, if there was any such testimony, then it was the duty of the Circuit Judge to submit the question of fact, whether both parties did claim from a common source, to the jury. *Smythe* v. *Tolbert*, 22 S. C., 133, recognizing and following *Martin* v. *Ranlett*, 5 Rich., 541, in which it was held that, where the pleadings do not disclose the fact that both parties claim from a common source, it is competent for the plaintiff to introduce evidence tending to establish such fact, and it is for the jury to determine whether such evidence is sufficient. This, however, as was held in the cases above referred to, would not preclude the defendant from setting up a better title, derived from an independent source; but this the defendant did not undertake to do in this case. So that the real question presented by the first exception is, whether the Circuit Judge erred in holding that there was some evidence tending to show that both parties claimed through a common source—Lewis Drayton. We do not think so, for the fact that the defendant lived on the land in dispute with her

husband, Lewis Drayton, for about seventeen years, and, in the meantime, recognized the title of her husband by renouncing her dower on three mortgages executed by him covering said land; that she continued to remain there after he left, and that she subsequently made some effort to satisfy these mortgages, having actually made a small payment on one of them, certainly tended to show that the interest which she claimed in her answer, without specifying whence it was derived, was through her husband, Lewis Drayton. The first exception must, therefore, be overruled.

The fifth exception is stated in the following language: "Because his Honor erred in not granting a nonsuit on defendant's motion, the evidence of the plaintiff himself showing that his title was purely speculative, and was not a genuine fee simple deed." But for the argument of appellant, we would be utterly at a loss to conceive upon what basis this exception rests; for there is not the slightest testimony tending to show that the purchase of the land in dispute by the plaintiff was a mere speculative purchase. On the contrary, the testimony tends to show that the plaintiff was anxious to buy the land for his own use, and was willing to pay the purchase money, and did pay it, by his own labor. We learn, however, from the argument of appellant's counsel, that the very slender basis upon which this exception rests is the fact that plaintiff, on his cross-examination, said that, if he failed to recover this land, he expected to get his money back from his vendor, Wilkinson; a very reasonable expectation, when it appears that plaintiff's deed from Wilkinson contained a clause of warranty. It would, indeed, be a very startling proposition that a purchaser of land must be regarded as a mere speculative purchaser simply because the deed under which he acquires a title contains a covenant of warranty, which he expects to enforce in case he loses the land. It is very manifest that this exception must be overruled.

The second exception is as follows: "Because his Honor erred in leaving it to the jury to say whether or not the

parties claimed from a common source of title by reason of the fact that the defendant had renounced her dower on the mortgages—the construction of a written instrument being for the Court and not for the jury." This exception is based upon a misconception of the charge of the Circuit Judge. He was not called upon to construe, and he did not undertake to construe, any written instrument, nor did he leave it to the jury to construe the several renunciations of dower referred to. On the contrary, he simply left it to the jury to say, from all the facts and circumstances relied upon for the purpose, which had been testified to in the case, whether they believed that both parties claimed from a common source of title; and this was precisely in accordance with the rule laid down in *Martin* v. *Ranlett*, and *Smythe* v. *Tolbert*, *supra*. The cases cited by counsel for appellant in support of this exception are not applicable; for in *Buffington* v. *Smith*, 2 Brev., 98, the question was whether the deed, by which a widow assigned all her right of dower in a certain tract of land, operated as an assertion of her right to dower in the whole of the tract, or only in a small part thereof, in which alone it appeared that she was actually entitled to dower. In *Roach* v. *Davidson*, 3 Brev., 80, the question was, whether a deed by a widow conveying her right of dower in a tract of land could operate as a conveyance of her distributive share of her interest, under the statute of distributions. So, also, in *Brown* v. *Spand*, 2 M. Con. Rep., 12, and *Mayo* v. *Feaster*, 2 McC. Ch., 137, the question was whether a renunciation of dower could operate as a renunciation of a right of inheritance; and in *Tibbetts* v. *Langly Mfg. Co.*, 12 S. C., 465, the question was whether any act or declaration of the husband made after the wife's inchoate right of dower had attached could affect her right of dower. It is quite clear that none of these questions have any application to the present case. Here the question was, whether the simple fact that the defendant, the wife of Lewis Drayton, had renounced her dower on three mortgages executed by her husband while

he was in possession of the land, claiming it as his own, could be considered by the jury, along with other facts and circumstances, in determining the question of fact whether both parties recognized the title of Lewis Drayton, and claimed through him. The second exception cannot be sustained.

The third exception reads as follows: "Because his Honor erred in charging the jury, after he had finished his general charge, at the request of plaintiff's attorney, as follows: 'If you are satisfied from the testimony, not from any presumption of your own, but from the testimony, that the possession of Lewis Drayton (began) in 1872, before the act was passed, twenty years would be sufficient; but if adverse possession did not commence until after 1873, then ten years adverse possession would be sufficient—said charge not having been requested before the argument commenced, not being applicable to the facts, and tending to confuse and mislead the jury.' " For a proper understanding of the language used by the Circuit Judge as quoted in this exception, it is necessary to quote what was said by the Judge in the sentence immediately preceding such quotation, viz: "If Lewis Drayton entered in possession in 1872, the law at that time was that twenty years possession was necessary to prove adverse possession, but in 1873 the law was changed, making ten years adverse possession necessary to be proved." Putting these quotations together, although we are quite sure that the phraseology of the charge, as found in the "Case," does some injustice to the language used by the Judge, there can be no doubt that the jury were, in substance, correctly instructed, that if the possession of Lewis Drayton began in 1872, it would require twenty years possession to perfect his title, notwithstanding the act of 1873 had reduced the period to ten years. *Rehkopf* v. *Kuhland*, 30 S. C., 234, and *Lyles* v. *Roach*, 30 S. C., 291, where it was held that, if the possession commenced prior to 1873, it would require twenty years for such possession to ripen into a title, notwithstanding the possession may have con-

tinued for ten years after the passage of the amendatory act of 1873, for the reason that such amendatory act did not apply to cases where the right of action had already accrued. Indeed, the appellant does not impute any error to the Circuit Judge, in the proposition of law referred to in this exception, but the complaint is that the request for such a charge was not applicable to the facts, and tended to confuse and mislead the jury; and that such request was not presented at the proper time, as prescribed by Rule XI. of the Circuit Court. First, as to whether the charge tended to mislead and confuse the jury. The testimony was undisputed that the possession of Lewis Drayton commenced about 1872, and continued until 1889. If so, then clearly such possession continued for more than ten years after the passage of the act of 1873, and it was in the interest of the defendant, that the jury should have been specifically instructed, that this would not be sufficient to confer title, if such possession commenced in 1872, and hence we see no ground for complaint on the part of the defendant. As to the other objection—that the request was not submitted at the proper time—it is sufficient to say, that no such objection was interposed, either by the Judge or by counsel, when the request was submitted. Besides, we would not be disposed to put such a construction upon Rule XI. as would forbid a Circuit Judge from stating a correct legal proposition upon a point which had either been overlooked or insufficiently stated to the jury in the general charge. Exception three must be overruled.

The only remaining exception is the fourth, which is as follows: "Because his Honor erred in charging the jury as follows: 'You recollect that a motion for a nonsuit was made on the ground that it was not shown that there was a common source. I could not say then, as I do now, that that is a question for you; for it seemed to me that there was some evidence upon that point, that they both claimed from Lewis Drayton.'" To dispose of this exception, it would be sufficient to say, that no spe-

cific error is therein pointed out. But, waiving this, we learn from the argument that the specific errors intended to be charged by this exception are: 1st. That it was the expression of an opinion upon the facts, in violation of the constitutional provision upon the subject. 2d. That it emphasized the fact that both parties claimed from a common source of title. 3d. That it was allowing the jury to construe a written instrument. In considering these specifications of error, as contained in the argument, it will be necessary to bear in mind that this is an appeal from a judgment rendered before the adoption of the present Constitution, and hence the questions here presented must be considered with reference to the provision of the Constitution of 1868, forbidding a Circuit Judge from charging on the facts, but permitting him to state the testimony and declare the law. Considering these alleged errors in this light, it seems to us manifest that a mere reading of the charge of the Circuit Judge is quite sufficient to vindicate its correctness. When the motion for a nonsuit was made upon the ground that it was not shown that both parties claimed from a common source of title, it became the duty of the Circuit Judge to consider and determine—not whether *it was shown that both* parties claimed from a common source—but whether there was *any* testimony tending to show that fact. If there was any such testimony, then it was his duty, under the well-settled law, to refuse the motion, and leave it to the jury to say whether the testimony was *sufficient* to establish that fact. This is precisely what the Circuit Judge did in this case. He did not say, or even intimate, whether, in his opinion, the testimony was sufficient to establish the fact that both parties claimed from a common source of title, but he left that for the jury to say. All that he did say was, that, in his judgment, there was *some* testimony tending to show a claim from a common source; and this he was obliged to say in determining the question whether the nonsuit should be granted. We do not see that, in the language used in the charge, the Judge "em-

phasized the fact that both parties claimed from a common source of title," for all that he said (which, as we have seen, was the fact) was that there was *some* evidence upon that point; but he left it to the jury, fairly, to determine that question of fact, as well as all the other questions of fact in the case. As to the third specification of error upon which this exception is based—that the Judge left it to the jury to construe a written instrument—we need not add anything to what we have already said upon this point, as we are unable to discover that the Circuit Judge left any such question to the jury. The fourth exception must also be overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.