17942

MARSH PLYWOOD CORPORATION, Plaintiff-Respondent, v. Lola H. GRAHAM, Herman Graham, Braxton Graham, Ruby G. Beaver, Austin Graham, Eunice G. Cox, W. J. Graham, Adolphus Graham, Dale Graham, Eldron Graham, and Eugene Graham, Defendants-Appellants.

(126 S. E. (2d) 510)

*Messrs. James P. Stevens* and *John T. Holt,* of Loris, *for Appellants,*

*Messrs. T. Kenneth Summerford* and *J. Frank Looper,* of Florence, *for Respondent,*

July 16, 1962.

Lewis, Justice.

This action is between adjoining landowners and concerns title to a 52.68 acre tract of swamp land in Horry County. In 1920 S. M. Graham purchased a tract of land containing 232 acres, more or less, and in 1932 V. M. Derham purchased the adjoining tract of 200 acres. The question involved is whether the land in dispute is included in the Graham or the Derham tract.

The plaintiff holds a deed from V. M. Derham to the timber on the tract in dispute. When the plaintiff sought to cut the timber, its agents were prohibited from entering the premises by the defendants who claimed title to the disputed area as heirs at law of the said S. M. Graham, deceased. This action was then instituted by the plaintiff to have title to the timber confirmed in it under its deed from V. M. Derham and the defendants enjoined from interfering with the cutting of the timber. The claim of the plaintiff rested upon the validity of the title of V. M. Derham who conveyed to it the timber on the land, and the claim of the defendants rested upon the validity of the title of S. M. Graham from

whom they inherited. The lower Court determined all issues favorably to the plaintiff, holding that V. M. Derham was the owner of the lands in question, from which judgment the defendants have appealed.

The complaint alleged that V. M. Derham was the owner of the lands in fee simple. The answer of the defendants denied the ownership of Derham and alleged that they were the owners as heirs at law of S. M. Graham, deceased, both under the record or paper title and by adverse possession. The answer further alleged that the plaintiff, nor its predecessors in title, have ever been in possession of the premises and that this action is barred by the Statute of Limitations.

All issues were referred to the Master for Horry County for determination and, after hearing the testimony, he held that (1) V. M. Derham was the holder of a valid record or paper title to the land in question and (2) the defendants had failed to establish their claim to the land by adverse possession. The report of the Master was affirmed by the lower Court. No exceptions have been filed challenging the finding relative to the failure of the defendants to establish their claim of title by adverse possession and the correctness of such conclusion is not involved in this appeal. The lower Court based its finding that Derham held title to the lands in dispute solely upon its conclusion that Derham held a valid record title thereto. No finding was made that Derham held title by adverse possession, and properly so, for such issue was not tendered by the pleadings. Therefore, the only issue involved in this appeal concerns the record or paper title to the lands in dispute.

The pleadings placed in issue the title to the disputed area and the burden was upon the plaintiff to prove paramount title to the land. The action is one of trespass to try title and the plaintiff must recover, if at all, on the strength of his own title. *Lynch v. Lynch,* 236 S. C. 612, 115 S. E. (2d) 301.

Since the defendants claim the lands in dispute as heirs at law of S. M. Graham, deceased, and the plaintiff through its timber deed from V. M. Derham we will refer to the property in question, for convenience, as the Graham and Derham lands, the claim of Graham representing that of the defendants and that of Derham representing the claim of the plaintiff.

The plaintiff and the defendants placed in evidence their respective chains of title, under which each claimed ownership of the land. Both the Derham and Graham lands come from an original tract conveyed to one J. W. Jenrette in 1866. This tract was sold in two parcels, the eastern portion of 212 acres, more or less, in 1866 to one W. J. Sarvis and the western portion of 400 acres, more or less, in 1910 to one W. Tom Jenrette. The defendants' title stems from the deed to the eastern portion and the plaintiff's from the deed to the western portion. The title to the eastern and western portions remained separate until 1913 when one J. A. Lewis became the owner of both, he receiving a deed for the western portion in 1910 and for the eastern portion in 1913. J. A. Lewis conveyed the eastern portion, subsequently purchased by Graham, to one Barnhill in 1917 and the western portion, subsequently purchased by Derham, to one Whittington in 1919.

Neither party questions the chain of title of the other and it is conceded that both claim from a common source. In fact, there are two common grantors in the chains of title, J. W. Jenrette in 1866 and J. A. Lewis in 1913. It is undisputed that the conveyances out of both Jenrette and Lewis for the eastern portion of the 600 acre tract, now owned by Graham, constitute the senior grant.

The northern portion of the original 600 acre tract is in Pleasant Meadow Swamp and the area in dispute is the northeastern portion lying entirely in the swamp. The lands of Graham, as heretofore pointed out, come from the eastern portion of the 600 acre tract and those of Derham from the

western portion. Derham claims that the line between their lands runs north-south along their respective eastern and western boundaries until it reaches the edge of Pleasant Meadow Swamp. It is then claimed that the line runs in an easterly direction along the edge of the swamp for the entire width of the Graham lands, so that the lands of Derham would form the northern boundary of the Graham lands as well as the western boundary thereof. Graham contends, on the other hand, that the Derham lands do not bound his on the north but only on the west, the line separating their lands beginning at the run of Pleasant Meadow Swamp and running south the entire length of their properties. It is undisputed that, if the northern line of Graham extends to the run of Pleasant Meadow Swamp instead of to the edge, as contended by Derham, then Graham would own the lands in question. A determination of the question requires an examination of the descriptions in the deeds forming the respective chains of title to the Derham and Graham lands.

Since the conveyances out of the common grantors for the Graham lands were the senior grants, we will first examine the descriptions in the deeds forming the chain of title to that tract, keeping in mind that we are primarily concerned with locating the northern boundary of the Graham tract, that is, whether it extends to the run or only to the edge of Pleasant Meadow Swamp.

Beginning with the first common grantor, J. W. Jenrette, we find that he received title to the original 600 acre tract in 1866. The deed to him describes the land as "lying on Pleasant Meadow Swamp". The record shows that the northern boundary of this land was lands of Henry Anderson. It is undisputed that the boundary line between Anderson and the 600 acre tract was the run of Pleasant Meadow Swamp. J. W. Jenrette conveyed the eastern portion of this tract in 1866 to one W. J. Sarvis. The deed to Sarvis describes the location of that parcel as "being on the south side of Pleasant Meadow Swamp". While the Sarvis deed describes the

land as lying on the south side of the swamp, the northern boundary is given as the Henry Anderson lands and the western boundary as other lands of the grantor, J. W. Jenrette. Since, as stated above, the boundary between the Anderson lands and the 600 acre tract out of which this eastern parcel was carved, was the run of Pleasant Meadow Swamp, there can be no question but that the eastern tract conveyed to Sarvis had as its northern boundary the run of the swamp and would include the area in dispute in this action. This is clearly shown, not only by reference to the Anderson lands as the northern boundary, but to the further significant fact that the only western boundary given is other lands of the grantor, showing that the division of the 600 acre tract was by a line running from its northern to its southern boundary. This is further substantiated by reference to the deed to W. Tom Jenrette in 1910 for the western or remaining portion of the 600 acre tract. The deed gives, as the only eastern boundary of the land conveyed, the Sarvis lands (eastern portion) and the northern boundary as lands of Mincey (successor in title to the Henry Anderson lands).

The deed to Sarvis also attempts a description by courses and distances according to an undesignated survey. The survey description, however, is vague and indefinite and affords no aid in determining the extent of the land. Clearly, under such circumstances, the location of the tract by reference to the adjacent landowners would control. In the case of *Fulwood v. Graham,* 1 Rich. 491 it was held that in locating lands the following rules are resorted to, and generally in the order stated: 1 Natural boundaries; 2. Artificial marks; 3. Adjacent boundaries; and 4. Courses and distance.

Applying the foregoing principles, the conclusion is inescapable that the northern boundary of the eastern or 212 acre tract, as described in the deed of J. W. Jenrette to Sarvis in 1866, was the run of Pleasant Meadow Swamp and included

the area of 52.68 acres in dispute. The northern boundary was shown as the Anderson lands and the recognized southern boundary of the Anderson lands was the run of the swamp.

We shall not further encumber this opinion with a detailed analysis of each subsequent deed in the Graham chain of title. An examination of these conveyances will clearly show that the northern boundary of this tract is given as the Anderson lands, between which the boundary line was the run of the swamp. Graham purchased his tract of land in 1920 and the northern boundary is shown in the deed to him as the Anderson lands. Therefore, every deed in the chain of title to the Graham lands clearly establishes the run of Pleasant Meadow Swamp as its northern boundary and includes the area in dispute.

When we examine the chain of title to the Derham lands, we find nothing inconsistent with the descriptions in the deeds in the Graham chain of title until a deed in 1925 from the Clerk of Court for Horry County to one Bullock. J. A. Lewis, who came into possession of the entire original 600 acre tract in 1913, conveyed in 1919 to one Whittington the tract of land now owned by Derham, giving as the northern boundary of that tract the lands formerly of Anderson and the eastern boundary as lands of Barnhill, now owned by Graham. The deed from Lewis to Whittington for what is now the Derham tract, clearly did not include the area in dispute, and could not legally, for Lewis had conveyed in 1917 the eastern portion of the 600 acre tract to one Barnhill, which included the land in question. Apparently in 1922 Whittington employed S. D. Cox, a surveyor, to make a plat of his lands. In doing so, for no valid reason advanced in this record, the surveyor in making the plat showed the Whittington lands, now owned by Derham, as including the 52.68 acre tract now in question. This plat was never recorded. Whittington lost the lands through a mortgage foreclosure and, after public sale, deed was executed to the pur-

chaser, Bullock, by the Clerk of Court in 1925. In describing the lands of Whittington, now owned by Derham, the property was described in accordance with the Cox survey and included for the first time in any deed in the Derham chain of title the area of 52.68 acres. Subsequent deeds in the chain of title to the Derham land, including the deed to Derham, described the lands by reference to the Cox plat and included the disputed area.

Therefore, we have a situation where both Derham and Graham hold conflicting deeds to the land in dispute with both claiming from a common source, Graham having the senior title.

It appears settled that, in so far as record title is concerned, where both parties claim under a common source, the elder or better title will prevail. 28 C. J. S., Ejectment, § 23, p. 877; *Carr v. Mouzon,* 86 S. C. 461, 68 S. E. 661. Unquestionably, Graham has shown the senior and better title to the land in question from the common source and he has the paramount record title to the lands. He has not only shown a senior title from the two common grantors in the chain of title, but has shown conclusively that the lands in question were included in every conveyance in his chain of title from the common source in 1866 to the present. On the other hand, the chain of title of the plaintiff, upon whom the burden of proof rested to prove a paramount title, shows that the land in question was never included in any conveyance from either of the common grantors and was never included in any conveyance in the Derham chain of title until 1925 and then upon an incorrect plat made in 1922.

We recognize that this is an action at law and that the findings of the lower Court are binding on appeal unless they are wholly unsupported by evidence or are manifestly influenced or controlled by error of law. *Harrison v. Lanoway,* 214 S. C. 294, 52 S. E. (2d) 264; *Weston v. Morgan et al.,* 162 S. C. 177, 160 S. E. 436. However,

the Supreme Court not only has the right, but the duty, to review the record and determine if there are any facts to support the findings of the lower Court. *Pearce-Young-Angel Co., Inc. v. Charles R. Allen, Inc.,* 213 S. C. 578, 50 S. E. (2d) 698. Under our view of the record, the finding that Derham holds valid record title to the lands in dispute is wholly unsupported by the evidence and the judgment of the lower Court is, accordingly, reversed.

Reversed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.