## 10039

### *SPROTT *ET AL.* v. SPROTT *ET AL.*

### (96 S. E. 617.)

1. ADVERSE POSSESSSION—COLOR OF TITLE—EVIDENCE—ADMISSIBILITY.— The exclusion from the evidence of a part of a plat, introduced by plaintiff to show color of title, on the ground that the plat stated that the surveyor had not run part of the lines because of high water, but had adopted the old lines on other papers, was error.

2. ADVERSE POSSESSION—"COLOR OF TITLE."—"Color of title" is anything which shows the extent of the occupant's claim.

---

*Note.—This case was originally reported in 110 S. C., p. 438 (96 S. E. 61). In the former report the word "not" on page 448, sixteenth line from top of page, and occurring in the sentence beginning with the words: "Under the Act of 1889," should have been "now." See page 73 herein. This correction is made at the suggestion of Legare Walker, Esq., of the Dorchester Bar.—D. C. RAY, Reporter.

3. TAXATION—TAX DEED—DEFECTS—EXECUTION. — Where the treasurer issued his execution on land sold for taxes, under Act December 24, 1889 (20 St. at Large, p. 347), relating to abandoned land "not on tax duplicate or forfeited lists," which gave him no authority to issue such execution, and the sheriff's deed recited a sale under Act December 24, 1887 (19 St. at Large, p. 862), which was repealed by Act December 24, 1889 (20 St. at Large, p. 347), and the levy was made June 6, 1891, the execution wah without authority, and the tax deed was not *prima facie* valid.

4. APPEAL AND ERROR—UNNECESSARY QUESTIONS.—It becomes unnecessary to consider certain of appellant's exceptions, where the case must be reversed on other grounds decided.

Before DeVORE, J., Clarendon, Spring term, 1916. Reversed and new trial granted,

Suit by Sarah F. Sprott and others against Thomas Z. Sprott and others. Judgment for defendants, and plaintiffs appeal.

The following is a copy of the statutes referred to in the opinion: Act December 24, 1887 (19 St. at Large, p. 862):

An act in relation to forfeited lands, delinquent lands and collection of taxes.

Section 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That hereafter immediately upon the expiration of the time allowed by law for the payment of taxes in any year, the county treasurer of each county shall, and is hereby authorized and directed to, issue in the name of the State a warrant or execution in duplicate against each defaulting taxpayer in his county, signed by him in his official capacity, directed to the sheriff of his county or his lawful deputy, requiring and commanding him to levy the same by distress and sale of so much of the defaulting taxpayer's estate, real or personal, or both, as may be sufficient to satisfy the taxes, State, school, county and special, of such defaulters, specifying therein the aggregate amount of all his taxes, as well as the amount of each fund; which warrant or execu-

tion shall run substantially in these words (filling the blanks to suit each case), viz.: ——, treasurer for the county of ——, to the sheriff of —— county, or to his lawful deputy: Whereas, —— has been duly assessed the sum of —— dollars for defraying the charges of the State, school, county and special, for the fiscal year beginning November 1, 18—, as follows, to wit: For the State, $——; for public schools, $——; for county, $——; for special, $——, which —— has neglected to pay: These are, therefore, in the name of the State, strictly to charge and command you to levy by distress and sale of the personal property, and if sufficient personal property cannot be found, then by distress and sale of the land of the said ——, the sum of —— dollars, together with —— dollars, the charges hereof; and for so doing this shall be your sufficient warrant. Given under my hand and seal this —— day of ——, A. D. 18—. —— (L. S.), Treasurer of —— County.

And the sheriff to whom such warrant shall be directed shall take from such defaulter the following fees in the execution of his office, viz.: For serving each warrant, $1.50, besides mileage; for advertising sale, $1; for making sale and executing deed and of conveyance, $3; and for all sums levied as aforesaid, five per cent.; and the county treasurers, respectively, for every such warrant he shall issue shall have from such defaulter $1.

Sec. 2. That under and by virtue of said warrant or execution the sheriff shall seize and take exclusive possession of so much of the defaulting taxpayer's estate, real or personal, or both, as may be necessary to raise a sum of money named therein and said charge thereon, and, after due advertisement, sell the same before the Courthouse door of the county on a regular sales day and within the usual hours for public sales, for cash, make titles therefor to the purchaser complying with terms of sale, and annex to said title the duplicate warrant with indorsement thereon of his action

thereunder, put the purchaser in possession of the property sold and conveyed, and after deducting from the proceeds of sale the amount of taxes and charges to pay over the excess, if any there be, to the defaulting taxpayer, and the taxes so collected to the county treasurer. And in case there be no bid equal in amount to the taxes named in said warrant or execution, the county auditor shall buy the land for the sinking fund commission as the actual purchaser thereof for the amount of said taxes and penalties, costs and charges; and the sheriff shall thereupon execute titles to said sinking fund commission as to any other purchaser, and in the manner above provided, and shall put them or their authorized agent in possession of the premises. The land so sold and purchased and delivered to said commission shall be treated by them as assets of the State in their charge, and be sold at such times and in such manner as by them shall be deemed most advantageous to the State. In all cases of sale the sheriff's deed of conveyance, whether executed to a private person, a corporation or the sinking fund commission, shall be held and taken as *prima facie* evidence of a good title in the holder, and that all proceedings have been regular, and all requirements of the law have been duly and fully complied with. No action for the recovery of said land sold by the sheriff under the provisions of this act, or for the recovery of the possession thereof, shall be maintained unless brought within two years from the date of said sale.

Sec. 3. That in case the defaulting taxpayer, after levy of distress as aforesaid, shall allege that the taxes have been paid or are unjustly assessed against him, he can and may have said sale suspended, provided before said sale he pays to the sheriff the amount of taxes and costs named in the warrant, accompanied with his affidavit that said taxes have been paid, or are unjustly assessed against him, and within twenty days thereafter take such steps as are provided by law for corrections of unjust assessment, or to prove pay-

ment, and prosecutes the same to a successful result within a reasonable time. And in case the defaulting taxpayer, after the levy of the distress as aforesaid, makes no payment and affidavit as herein provided, he shall be deemed in law to have waived all exception to the omissions, errors and irregularities (if any there be) in the assessment of said tax and in all preliminaries to said sale as prescribed by law, and to have admitted that each and all preliminary steps to said assessment and sale, and said assessment and sale are in accordance with requirement of law.

Sec. 4. That the county auditors of the several counties be, and are hereby, authorized and directed to restore the tax duplicate of their counties respectively, in the name of the former owner, or his heirs or assigns, each and every parcel of land in their several counties now listed on the forfeited land record, and said to be in charge of the sinking fund commission, and enter against the same the taxes, State, school, county and special, of its said owner for the fiscal year beginning 1 November, 1887.

Sec. 5. That the State of South Carolina hereby renounces all title by forfeiture for nonpayment of taxes to each and every of said parcel of land and will treat them hereafter as the lands of the former owner, his heirs or assigns; but this renunciation of title is upon the reservation and condition that the State may hereafter collect by suit at law, or other legal method, from said lands a sum equal to the aggregate amount of all annual assessments for taxes with the penalties that might and would have been assessed and charged against the said lands in case the same had never been declared delinquent and forfeited; and the retention of the possession and use of said lands for ninety days after the approval of this act by said former owner, his heirs or assigns, shall be deemed sufficient evidence of his or their acquiescence in and acceptance of the reservations and conditions of said renunciation of title.

Sec. 6. That the sinking fund commission be, and is hereby, authorized to hear and determine, upon satisfactory proof, the petition of any taxpayer praying relief on ground that all taxes, as described in last section, have been paid, or that portions of such taxes have been paid and an offer to pay the balance, accompanied by the sum admitted to be owing; and the said sinking fund commission shall grant such relief in the premises as may be just. And the said sinking fund commission is hereby empowered to compound with the former owners, their heirs or assigns, for all such taxes as described in last section at one-half part of the whole sum so due, without penalties, provided the money is paid into the hands of said commission on or before the expiration of one year fr )m date of approval of this act, and the receipts of said commission for such part thereof shall discharge the said taxpayer and his said land from any further liability to the State on that account : *And provided, further,* That the commissioners of the sinking fund be authorized in such cases and to such extent as they may deem most advantageous to the State to bring an action as for debt against the former owners, or any person or persons having any legal or equitable interest in said lands, for the recovery of the full amount of all taxes, cost and penalties accrued, to and including the levy of 1886, upon any land upon the forfeited land lists at the time of the passage of this act. Any judgments obtained in such actions shall have a lien upon the lands respectively upon which such taxes, costs and penalties have accrued, and the same shall be sold under execution by the sheriff in due course of law, and the proceeds of any such sale shall be applied first to the payment to the sinking fund commission of the taxes, costs and penalties charged against the property, and next to the payment of the taxed costs in the suit and expenses of sale, and the surplus, if any there be, shall be paid over to the former owners, or parties in interest as their interest may appear.

The sinking fund commission are hereby authorized to employ suitable agents in counties where the said lands are located, on such terms as they may deem proper, to take possession of said land, and lease, control and manage the same for them.

Sec. 7. So much of all acts or parts of acts as are inconsistent with the provisions of this act be, and hereby is, repealed, and this act shall take effect from and immediately after its approval.

Sec. 8. That the Comptroller General shall immediately after the approval of this act have same printed in pamphlet form and send a copy of same to each of the county auditors and treasurers of the State.

Approved December 24th, A. D. 1887.

Act December 24, 1889 (20 St. at Large, p. 347):

An act in relation to abandoned lands not upon the tax duplicate or forfeited land list.

Section 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That the commissioners of the sinking fund be, and they are hereby, authorized to have surveyed any lands that they are informed or believe have been continuously for ten or more immediately preceding years upon neither the tax duplicate or forfeited land list of this State, and if after such survey the said absence from said tax books be found to exist, to cause the said land to be placed upon the tax duplicate in the owner's name if known, or in the name of "Unknown" if the owner's name be not known, charged and taxed with the entire costs of the survey and investigation, and fifty per cent. penalty additional thereto, and with the taxes for five years immediately preceding, and collecting the same under existing law for collection of taxes. County treasurer shall pay to the sinking fund commission said costs

of survey and said fifty per cent. penalty additional thereto from amount collected, and apply the residue as provided by law.

Sec. 2. That this law shall be by the sinking fund commission applied to such extent and in such cases as they may deem most advantageous to the State.

Sec. 3. That all acts and parts of acts inconsistent with this act be, and they are hereby, repealed.

Approved December 24th, A. D. 1889.

*Messrs. Davis & Wideman,* for appellants, cite: *As to color of title:* 2 Hill 492; 14 S. C. 549; 2 Rich. 629; 1 McC. 278; 3 Strob. 498; 16 S. C. 469; 25 S. C. 187; 42 S. C. 146; 78 S. C. 521; 87 S. C. 388; 94 S. C. 77; 3 McC. 164; 1 Nott & McC. 373; 40 S. C. 435; 1 Cyc. 1082 and 1084; 2 McMul. 495; 2 Rich. 488; 2 Strobh. 24; 9 S. C. 269; 86 S. C. 497; 49 S. C. 246; vol. I, Code of 1912, sections 4000 and 4001. *As to tax title:* XX Stat. 347; XIX Stat. 862; 33 S. C. 164; 67 S. C. 537; 37 Cyc. 1319; XIX Stat. 865; 37 Cyc. 1320; 62 S. C. 503; 44 S. C. 473; 75 S. C. 252; 2 Rich. 27; 37 S. C. 400. *As to burden of proof:* 31 S. C. 265; 28 S. C. 530; 509 S. C. 446; 78 S. C. 23; 91 S. C. 234; 3 Strob. 473-4.

*Mr. Marion W. Seabrook,* for the respondent, Santee River Cypress Lumber Company, submits: *That the McIlwain plat was hearsay:* 57 S. C. 448; 35 S. E. 746; 46 S. C. 59; 24 S. E. 60; 69 S. C. 101; 48 S. E. 86; 5 Cyc. 968; 9 Corpus Juris 287; 12 N. Y. App. Div. 622; 78 S. E. 209; 162 N. C. 381; 44 Oregon 237; 89 Oregon 417; 90 S. W. 898; 74 S. E. 655 (W. Va.); 159 S. W. 391 (Tex.); 16 Cyc. 1214; 1 Rich. 310. *Exceptions to hearsay rule not applicable here:* 16 Cyc. 1239; Wigmore's Pocket Code of Evidence, sec. 1038; art. III, p. 244; 20 S. C. 421; 7 S. E. 804; 26 S. C. 236; 1 S. E. 893; 9 C. J. 273; 256 Mo. 466; 165 S. W. 990. *Emasculation of the plat no error:* 53 S. C.

358. *The notice to produce copy insufficient:* 49 S. C. 242; Code of 1912, sec. 4000; sec. 3999; sec. 4001. *As to the admission in evidence of old documents:* 2 McMull. 498; 14 S. C. 542; 2 Nott & McC. 400; 6 Rich. Eq. 155; 28 Mich. 521; 71 S. C. 322; 51 S. E. 101; 40 Cyc. 1380-1381; 16 Cyc. 864; 2 Corpus Juris, note 57, page 276. *Recital in ancient documents:* Wigmore on the System of Evidence, section 1573, given as rule 145, pp. 245 and 246 of his Pocket Code of Evidence; Wigmore's Larger Work, p. 167. *As to the tax title:* Code of 1912, vol. I, sec. 474; 80 S. C. 146; 61 S. E. 399; 31 S. C. 547; 10 S. E. 330; 73 S. C. 775; 44 S. C. 470; 22 S. E. 607; 104 S. C. 113. *As to the tax statute of limitations:* Code of 1912, vol. I, XIX Stat. 863; Circuit Court Rule 55; 25 Cyc. 1023; 98 S. C. 175; 49 S. C. 1; 26 S. E. 898; 124 N. C. 78; 32 S. E. 381; 118 N. C. 796; 24 S. E. 748; 81 S. C. 307; 62 S. E. 320; 154 Iowa 49; 134 N. W. 436; 65 S. C. 22; 99 S. C. 72; 82 S. E. 1052. *As to the expression "known farm:"* Code, vol. II, sec. 1228, subd. 4. *Plaintiff's title necessary to a recovery:* 99 S. C. 151; 82 S. E. 151; 100 S. C. 144; 82 S. E. 415; Warville on Abstracts (3d Ed.), sec. 617, p. 741. *As to the tax sale statutes:* 33 S. C. 161; 11 S. E. 684; Gen. Statutes, 1872, chap. XII, sec. 63; Code of 1912, vol. I, sec. 105; XX Stat. 347; XIX Stat. 863, sec. 471; Code of 1912, vol. I; section 2 of act of 1877. *As to respondent's additional grounds:* Code of 1912, vol. II, sec. 127; 3 S. C. 34.

July 18, 1918.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was a suit for partition in which the Santee River Cypress Lumber Company was joined as a defendant under the allegation that it claimed some interest in the premises sought to be partitioned. In fact the controversy is between this defendant-respondent and the other parties to the suit. This respondent by answer denied title of plaintiffs, and set

up title in itself to four tracts of the land sought to be partitioned. The contest is over a large body of swamp land embraced within the interlock of the plats of the contending parties. The case was tried before Judge DeVore and a jury at the March term of Court, 1916, for Clarendon county, and resulted in a verdict for the Santee River Cypress Company. A motion for a new trial was made and refused.

After entry of judgment appellants appeal, and by 15 exceptions allege error, and the respondents served notice that they would ask that this Court sustain the judgment of the Circuit Court upon four additional grounds. At the hearing the appellants abandoned their second exception. The exceptions relate mainly to his Honor's holdings and charge on the following subjects: First, color of title; second, tax deeds; third, burden of proof.

The first, third and fourth exceptions allege error in excluding from evidence that portion of the McIlwain plat offered in evidence, where the surveyor stated that he had not run the lines because of high water, but had adopted the old lines on old papers for the reason that the plat delineated the land claimed by the plaintiffs and showed the extent of their claim and was a good color of title. This exception should be sustained. The plat should have gone in for what it was worth to show the extent of plaintiff's claim and holding, and his Honor was in error in curtailing the force and effect of the plat. It certainly was a circumstance to show the extent of plaintiffs' claim for a color of title; it is requisite to show the extent of occupant's claim, and the color of title need not, of necessity, be in writing, but a line of stakes or marking of trees, coupled with possession is sufficient. The plat in question should have been admitted not as original evidence of the location of the premises in question, but for the purpose of showing that plaintiffs' possession was held under a claim of title embracing the swamp portions of the tract as well as the upland

portions of the tract as shown by the McIlwain plat and evidence showed they had passed the upland many years.. The lines drawn on the plat show the extent of the claim made by the occupant under the plat. The plat may not be accurate, but it shows the extent of occupant's claim under it, and was competent evidence as color of title. "Color of title is anything which shows the extent of occupant's claim." *Simmons v. Parsons*, 2 Hill 492; *Slice v. Derrick*, 2 Rich. 629; *Turnipseed v. Hawkins*, 1 McCord 278; *Thompson v. Brannon*, 14 S. C. 549; *Stanley v. Shoolbred*, 25 S. C. 187; *Heyward v. Farmers' Co.*, 42 S. C. 146, 19 S. E. 963, 20 S. E. 64, 28 L. R. A. 42, 46 Am. St. Rep. 702. Exception 1 is sustained.

Exception 3 is overruled for what is said in sustaining exception 1. The will was admitted, not as a will, but as color of title for *bona fide* claim.

The exceptions 6, 7, 8, 9, 12, 14 and 15 raise issue as to the tax deeds. The first question raised is that the sale is invalid because the treasurer issued his execution—it appears on the face of the papers—under "An act in relation to abandoned lands not upon the tax duplicate or forfeited land list (20 Stat., p. 347). and the sheriff says he acted under "An act in relation to forfeited lands, delinquent lands, and collection of taxes" (19 Stat., p. 862), and that his Honor committed error in charging the jury that the deed was *prima facie* evidence of title, etc. It appears from the executions issued by the treasurer that he acted in pursuance with an act entitled "An act in relation to abandoned lands not upon the tax duplicate or forfeited land list." This act was approved on December 24, 1889, and is found in 20 Statutes at Large, p. 347. The executions of the treasurer are dated June 8, 1891. The sheriff's deed recites that he sold the property under an act entitled "An act in relation to forfeited lands, delinquent lands and collection of taxes, approved December 24, 1887." The reporter will report both of these acts. The levy proceed-

ing, the sheriff's deeds show that the levy was made June 6, 1891, and lands were levied upon and sold as lands of "Unknown." The deeds must be governed by the statutes in force at the time of the levy or of its execution under the statutes in force at the time of this sale. There is no authority of law for the treasurer to issue his execution and make sale, neither under the act approved December 24, 1889. This act expressly repeals the act approved December 24, 1887. The execution issued by the treasurer was issued under an act which gave him no authority to do so, and an execution being a necessary step towards the sale of delinquent lands and being void in this case the tax deeds of sheriff are invalid and void. Under the act of 1889 the duty of collecting taxes under such cases as are now at bar and involved in this case was devolved, upon the sinking fund commission, and the method pointed out and manner in which the sinking fund commission were to proceed. Under the act of December 24, 1889, the act recited in the treasurer's execution, there is no provision for the issuance of such execution, and the issuance of the execution was void and of no effect. It, therefore, follows that the sale under this execution is invalid. "All the requirements of the law leading up to tax sales, which are intended for the protection of the taxpayer against surprise or the sacrifice of his property, are to be regarded mandatory, and are to be strictly enforced." *Dickson v. Burckmyer,* 67 S. C. 526, 46 S. E. 343.

We having reached the conclusion that there should be a new trial, and that the tax deeds are invalid, it is unnecessary to further consider the appellants' exceptions.

The respondents' grounds for sustaining the judgment are overruled.

New trial granted