### 10855

### HOPKINS v. OAKLAND CLUB *ET AL.*
#### (111 S. E. 888)

ADVERSE POSSESSION—INSTRUCTION DIRECTING VERDICT FOR DEFENDANTS HELD ERROR IN VIEW OF THE EVIDENCE.—In an action to enjoin the defendants from going upon plaintiff's land and making surveys, etc., and that plaintiff's title be adjudged valid, an instruction by the Court, at the conclusion of plaintiff's showing in chief and without any evidence from defendants, directing the jury to bring in verdict for defendants, *held* error; there being more than a scintilla of evidence as to plaintiff's title by adverse possession.

Before SHIPP, J., Berkeley, April, 1921. Reversed and remanded.

Action by Geo. W. Hopkins against Oakland Club, Santee Timber Corporation and E. Golden Filer. From directed verdict in favor of the Oakland Club and Santee Timber Corporation against the plaintiff Hopkins and defendant Filer, said Hopkins and Filer appeal.

The following are the exceptions referred to in the opinion:

I. His Honor erred in directing a verdict for the defendants Oakland Club and Santee Timber Corporation against the plaintiff, George W. Hopkins, and the defendant, E. Golden Filer; whereas, he should have held, in accord with the evidence, that there was ample proof to establish the legal title and possession of the said Hopkins and Filer to the premises described in the complaint, and

to establish all the material allegations of the complaint and of the answer of the said E. Golden Filer, requiring the case to go to the jury.

II. His Honor erred in holding (a) that plaintiff and the defendant, Filer, had shown nothing more than occasionally going over the lands and hunting; that the only evidence that has been shown in this case is that the claimants, who lived in the cities, had an agent down there who occasionally went over there and hunted on the land, and who once or twice put up notices along the river, on one side of it, towards the river, forbidding anybody to trespass on it, that the agent ceased to go over there after 1909, and nobody was in possession of it at all; (b) that because sometimes a person gets a title by adverse possession, the law does not presume he is in possession, and (c) that where a person has a legal title, the law presumes he has possession of it, but there is no proof; and his Honor erred in therefore directing a verdict; whereas, he should have held, in accord with the proof, that the evidence showed much more than that to establish the title and possession of Hopkins and Filer to the premises involved, in fact, independently of the tax deed, or its validity, showed their title and possession under color of title to have ripened into both the presumption of a grant and tilte by adverse possession even prior to any trespass or attempt to cloud title by Oakland Club or Santee Timber Corporation, or their predecessors, who were only owners of an adjacent property attempting to exceed the bounds of their own muniments and plat by recently making a new plat and spreading documents on record purporting to embrace, and trespassing on, Hopkins' and Filer's land, but not possessing it for the required time, without which they could not, in law, even question the sufficiency of Hopkins' and Filer's prior adverse possession, which gave Hopkins and Filers a presumption of present possession sufficient to maintain this action.

III. His Honor erred in holding that counsel had offered some scintilla of evidence, but the scintilla must be something from which you can draw a reasonable inference that the person was in actual possession of the land, and in, therefore, directing a verdict; whereas, he should have held that the evidence of Hopkins' and Filer's title by adverse possession was much more than a mere scintilla, and that even a scintilla would have required the submission of the issue to the jury.

IV. His Honor erred in ignoring the evidence adduced by Hopkins and Filer, showing that one of the predecessors of Oakland Club and Santee Timber Corporation had disclaimed title to the premises in question, and in not submitting that issue to the jury.

V. His Honor erred in holding that plaintiff's title is not legal for the reason that the county treasurer had no authority to issue executions, therefore the tax sale was void, it being the duty of the sinking fund commission to make these sales rather than the county treasurer, and in, therefore, directing a verdict; whereas, he should have held the tax sale and deed valid and regular, or, even if irregular and void, not open to the attack of Oakland Club and and Santee Timber Corporation, because

(a) Oakland Club and Santee Timber Corporation, under the evidence, were mere trespassers without title, or claim of title, sufficient to enable them to question the tax deed, the right to impeach a tax sale being the right only of the owner of the property at the time of the sale, or of those claiming under such owner, and there was no showing that these corporations were such owner, or claiming under such owner; on the contrary the evidence showing that the tract they claimed did not at that time embrace the premises in dispute, which extended two miles further than their claim.

(b) There was no showing that Oakland Club, or Santee Timber Corporation, or those under whom they claimed,

paid or tendered the taxes and levies for which the land was`sold, with the costs, prior to the sale, at the proper time, and to the properly authorized officials, as required by law prerequisite to an attack on the tax title, if the sale was a bona fide effort on the part of the State or County to collect taxes justly due (which issue should have been submitted to the jury), the evidence clearly showing that the predecessors of Oakland Club and Santee Timber Corporation did not pay any taxes on the land in dispute at that time or thereafter.

(c) There can be no collateral attack on the tax title.

(d) The evidence showed that the tax sale and deed were made in accordance with the accepted custom and interpretation of the laws prevailing at that time, which, if technically not strictly correct, should be recognized and enforced by the Court, as a rule of property growing out of common error.

VI.   His Honor erred in excluding from the evidence the original Record Book V-2, and the 24 tax deeds there recorded, which were similar to the one in this case, issued the same way, and with similiar executions, and which were competent and relevant to show that, if the instant tax sale and deed were not technically regular, the irregularity was in pursuance of the accepted custom and interpretation of the laws prevailing at that time, which should be recognized on the ground of common error.

VII.   His Honor erred in sustaining the objections to the examination of the witness J. B. Morrison, tending to show by what authority he made the instant tax deed, whether or not at that time he was undertaking to get all these lands on the tax books; whether or not he made any similiar  sales at that time; whether or not in his experience as sheriff he sold numerous tracts of land in the name of unknown and even abandoned land, where the authority that he had for the sale was execution from the county treasurer;  what was the common practice during his term`of

office as to how the execution should be issued for the sale of unknown lands or abandoned lands; and whether or not he knew what was the general practice throughout the State for the sale of lands of this character, which testimony was competent and relevant to show that any alleged irregularity in the present tax sale and deed was merely due to the accepted custom and interpretation of the law prevaling at that time, which should be recognized and enforced as a rule of property on the ground of common error.

VIII.   His Honor erred in holding that, the tax deed not being legal, plaintiff cannot avail himself of the two-year statute of limitations, and in therefore directing a verdict; whereas, he should have held that the very purpose of such statute was to protect one claiming under an assailable tax deed if not contested within that time, otherwise the statute is without force or meaning.

*Messrs. J. H. Clifton, M. W. Seabrook* and *N. N. Newell,* for appellants, cite: *Tax title even if void, is color of title:* 87 S. C. 388; 108 Va. 612; 1 Cyc. 1095; 96 S. E. 617. *Adverse possession confers title which may be affirmatively asserted:* 25 S. C. 312; 39 S. C. 14; 74 S. E. 381. *Acts of adverse possession need only be such as are consistent with the character of the land:* 95 S. C. 245; 82 S. C. 358. *Actual possession once taken will continue until there has been an ouster:* 105 S.C. 341; 1 N. & McC. 356; 3 Strob. 479; McMull Eq. 35; 2 S. C. 215; 82 S. C. 218; 110 S. C. 474; 95 S. C. 347. *One entitled to immediate possession may maintain action:* 98 S. C. 111; 61 S. C. 292. *May recover on prior possession alone:* 56 S. E. 107; 54 S. E. 968; 43 S. E. 786. *Sufficient evidence to take case to jury:* 90 S. C. 384; 90 S. C. 528; 106 S. C. 419; 54 S. C. 498; 54 S. C. 80. *Defendants cannot attack tax title:* 37 Cyc. 149; Id. 1377; 31 S. C. 547. *Tax title not made under* 20 Stat. 347, *and* 110 S. C. 438 *does not apply. Executions conform to* 19 Stat. 862.

*Forfeited lands*: 18 S. C. 538. *Unknown owner*: 99 S. C. 72; 33 S. C. 164. *Sheriff was required to put purchaser in possession under Act* 1887: 44 S. C. 470. *Presumption of regularity as to tax title*: 31 S. C. 547; 80 S. C. 146; 99 S. C. 172. Cooley Tax'n, 359–60. Blackwell Tax Titles, 535; 37 Cyc. 1473. *At least State has parted with title*: 98 S. C. 289; 45 S. C. 312. *Common error in usage will be approved*: 36 Cyc. 1139, 1140; 1 N. & McC. 460; Harp. L. 101; 18 S. C. 339; 50 S. C. 365.

*Messrs. L. D. Lide, A. T. Smythe, E. J. Dennis* and *Octavius Cohen,* for respondents. *Messrs. Lide and Smythe,* cite: *Tax deed made under* 19 *Stat.* 862 *is void*: 110 S. C. 438. *Maxim of "Communis error" has never been applied to work a forfeiture*: 18 S. C. 339. *Evidence to sustain claim must be such as to convince person of ordinary reason*: 99 S. C. 417; 104 S. C. 16; 99 S. E. 356. *Trial Judge's construction of evidence will hold unless clearly wrong*: 104 S. C. 149. *Effect of payment of taxes in claim of title*: 78 S. C. 23; 98 S. C. 289; 99 S. C. 172. *Posting of notices is not adverse possession*: 1 Cyc. 994. *Adverse possession*: R. C. L. 695; 6 Rich. 62; 3 Rich. 101; 3 S. C. 34; 2 N. & McC. 343; 2 N. & McC. 534; 2 Rich. 627. *Occasional hunting and fishing no evidence of title or possession*: 4 Rich. Cheves 259; 1 R. C. L. 700; Dud. 177. *Adverse possession must be continuous in some form for the period*: 2 McM. 260; 1 McM. 354; 25 S. C. 252; Code Proc. 1912, Sec. 128; 82 S. C. 358; 86 S. C. 285; 78 S. E. 982; 53 S. C. 216; 95 S. C. 347. *Abandonment tends to show there was no previous adverse possession*: Dud. 177; 10 Rich. 433.

April 11, 1922.

The opinion of the Court was delivered by Mr. CHIEF JUSTICE GARY.

The following statement appears in the record:

"This action was commenced on December 22, 1917. The substance of the complaint is that the plaintiff and the defendant Filer are the owners of and have and claim title to, and are seized as tenants in common of a tract of 1,895 acres of land in Berkeley County, of which a partition sale is desired; that the premises consist entirely of swamp land, in the deep swamps of Santee River, impracticable for actual residence or the usual uses of husbandry, and is therefore unoccupied real property, although the plaintiff and his cotenant are seized and possessed thereof in such manner, and to such extent as lands of that character are susceptible of; that plaintiff is informed and believes that the defendants Oakland Club and Santee Timber Corporation claim some interest therein adverse to the said Hopkins and Filer, and have entered and trespassed on the land, caused surveys to be made, and spread upon the public records of the county, instruments purporting to be deeds, plats, etc., affecting the premises, with intent to create a cloud upon their title, and claim an interest adverse to them; and, although such acts of trespass have not been long enough continued or committed in a manner sufficient to ripen into an adverse title, still they are continued and repeated occurrences, and may be continued unless restrained by the Court; otherwise Hopkins and Filer will be subject to constant harassment from the said Oakland Club and Santee Timber Corporation, who are seeking to embarrass their title, and will lose the same if the acts are permitted to continue for a sufficient length of time longer; and demands judgment for injunction against the acts complained of; that the title of Hopkins and Filer be adjudged valid in fee simple in possession and the claim of Oakland Club and Santee Timber Corporation null and void and their cloud on Hopkins' and Filer's title removed; for damages against Oakland Club

and Santee Timber Corporation and for partition with E. Golden Filer.

"Oakland Club and Santee Timber Corporation raise an issue of title, and set up the statute of limitations for 10 and 20 years, respectively, and adverse possession.

"E. Golden Filer admits the complaint and joins in its prayer, and sets up against Oakland Club and Santee Timber Corporation for the statute of limitations for 10 and 20 years, respectively, and, after alleging that under a valid sale for defaulted taxes the predecessors of Hopkins and Filer were put or went into possession, sets up the two-year statute of limitations against contesting such tax title, and that the taxes and levies for which the land was sold were not paid, prior to the sale, to the properly authorized officials.

"The case was tried before his Honor, S. W. G. Shipp, and a jury. At the conclusion of the plaintiff's showing, and without any evidence from the defendants, a verdict was directed in favor of the defendants, Oakland Club and Santee Timber Corporation, against the plaintiff George W. Hopkins and the defendant E. Golden Filer."

After hearing argument, pro and con, and without announcing a decision, the Judge suggested to Mr. Lide that he could not grant a nonsuit in this case, being an equitable action, and requesting him to look up certain authority during the noon recess, whereupon the Court adjourned for dinner. Upon the reconvening of the Court, Mr. Lide produced the authority asked for, and stated that the Court was correct about not being able to grant a nonsuit in this case, but asked that it be made a direction of verdict, which his Honor proceeded to do without hearing further from counsel for plaintiff and the defendant, Filer. In directing the verdict his Honor said:

"I have thought about this case very seriously. It has given me some trouble, especially these swamp lands, but it strikes me that a person ought to show something

more than merely occasionally going over a place and hunting. Under this recent case, *Sprott v. Sprott,* the title held by the plaintiff in the case is not a legal title, for the reason that the county treasurer had no authority to issue executions. Therefore the sale was void as far as the tax sale is concerned; it being the duty of the sinking fund commission to make these sales rather than the county treasurer. That has been recently held.

"Therefore, the deed did not convey a legal title; consequently the plaintiff cannot avail himself of the statute which provides that unless the owner of the land brought suit within two years, he could not afterwards contest the title. Therefore, the statute does not apply, and the plaintiff has offered no legal title. The deed is good as color of title. By color of title it is meant that he had a deed or had a plat or had anything that describes the claim that the person makes and gives a description of the land he sets up a claim to.

"Where a person has that kind of paper, he has color of title, and where no one is upon the land, and he takes actual possession of the land and occupies it, and commits and continues acts of owenership on it, holds domain over it to the exclusion of everybody else, hold it notoriously, openly, for a continuous period of 10 years, he acquires a legal title.

"The only evidence of ownership that has been shown in this case is that the claimants, who lived in the cities, had an agent down there, who occasionally went over there and hunted on the land, and who once or twice put up notices along the river, on one side of it, towards the river, forbidding anybody to trespass on it. That agent ceased to go over there after 1909, I believe, and nobody was in possession of it at all; because sometimes a person gets a title by adverse possession, the law does not presume he is in possession. Where a person has a legal

title, the law presumes he had possession of it, but there is no proof.

"Counsel has offered some scintilla of evidence, but a more recent decision of our Supreme Court says the scintilla of evidence must be something from which you can draw a reasonable inference that the person was in actual possession of the land.

"That being my view about it, I do not see any use of going further into the case. If I am wrong, the Supreme Court will correct me about it.

"That being my view of it, I direct the jury to write out the following verdict: 'We find for the defendants Oakland Club and Santee Timber Corporation against the plaintiff George W. Hopkins and the defendant E. Golden Filer.' "

The plaintiff George W. Hopkins and the defendant E. Golden Filer appealed upon exceptions, which will be reported.

There is a preliminary question to be determined. On application of the plaintiff's attorneys, this Court granted permission to review the case of *Sprott v. Sprott,* 114 S. C. 62, 96 S. E. 617. After due consideration, the Court adheres to its ruling in that case.

The only question in the case, practically, is whether there was error on the part of his Honor, the presiding Judge, in directing a verdict in favor of the two corporations. Our conclusion is that there was more than a scintilla of evidence to sustain the allegations of the complaint, and that his Honor, the Circuit Judge, erred in directing a verdict. We do not deem it advisable to discuss the testimony in detail, as there must be a new trial, and the rights of either the plaintiff or the defendants might, thereby, be prejudiced.

Reversed and remanded for a new trial.