17686

Esther LYNCH, Respondent, v. Lolie H. LYNCH, Foster M. Lynch,
Jr. and C. Wulbern Lynch, Appellants

(115 S. E. (2d) 801)

*Messrs. Royall & Wright* and *John M. Scott,* of Florence, *for Appellants,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondent,*

*Messrs. Royall & Wright* and *John M. Scott,* of Florence, *for Appellants, in Reply,*

July 21, 1960.

Moss, Justice.

This is an action of trespass to try title, instituted by Esther Lynch, the respondent herein, against Lolie H. Lynch, Foster M. Lynch, Jr. and C. Wulburn Lynch, the appellants herein. The complaint alleges that the respondent is the owner for life of a tract of land located in Florence County, South Carolina, and that the appellants have trespassed upon a portion thereof, such being a small area containing 4.82 acres, of what is known as the Steele tract. The appellants denied title in the respondent and set up title in themselves by adverse possession and prescription. The answer further denied possession of the respondent, or her predecessor in title, within ten years before the institution of this action.

This case was tried before the Honorable T. B. Greneker, Presiding Judge, and a jury, and resulted in a verdict for the respondent. At appropriate stages of the trial, motions for a nonsuit, directed verdict, and judgment *non obstante veredicto,* and alternatively for a new trial, were made and denied by the trial Judge. This appeal followed.

The appellants and the respondent all claim through J. C. Lynch, who, at one time, owned a goodly portion of Florence County.

It appears from the record that on May 18, 1920, J. C. Lynch, reserving a life estate in himself, executed and delivered a deed to his son, F. M. Lynch, conveying a tract of land containing 519½ acres. This said tract of land is more fully described upon a plat of same made by E. J. Smith, Surveyor, of date April 10, 1920, which said plat is of record in the office of the Clerk of Court for Florence County, South Carolina, in Plat Book B, at page 182. The aforesaid deed

was recorded in Deed Book 36, at page 776, in said Clerk's office. It appears that the deed and the plat were both recorded on May 21, 1920. The record reveals that F. M. Lynch died on January 9, 1955, and the aforesaid tract of land descended to the appellants.

It appears from the record that on December 4, 1930, J. C. Lynch, reserving a life estate in himself, executed and delivered a deed to his son, Troy J. Lynch, conveying, along with other property, a tract of land containing 20 acres, known as the Jordan lands, and also a tract of land containing 99 acres, known as the Steele land. This deed was recorded in the office of the Clerk of Court for Florence County, South Carolina, on December 8, 1930, in Deed Book 12, at page 257. Troy J. Lynch died testate on January 13, 1956, and devised a life estate in these two tracts of land to his widow, the respondent herein.

The testimony shows that J. C. Lynch, the predecessor in title to the lands in question, died April 17, 1934. His death, of course, extinguished the life estate reserved by him in the deeds made to his respective sons.

It was agreed that if Troy J. Lynch had title to the disputed area containing 4.82 acres at the time of his death, that the respondent, under his will, has a life estate therein; and if F. M. Lynch owned the property, that the appellants, as his only heirs, inherited his interest. It is also admitted that the land deeded by J. C. Lynch to Troy J. Lynch and F. M. Lynch adjoins, and the real question for determination by the Court is what constitutes the correct property line between these tracts of land. The appellants admit that the disputed area is not included in the deed from J. C. Lynch to F. M. Lynch, and that such property is outside the boundary of the plat made by E. J. Smith, Surveyor, and referred to in said deed and made a part thereof by reference.

It is undisputed that on February 5, 1907, that Frazier Miles conveyed to J. C. Lynch a tract of land containing 105½ acres. This deed is recorded in Deed Book W, at page

361, Clerk of Court's Office for Florence County, South Carolina. A plat of the Frazier Miles tract of land, made by E. J. Smith, Surveyor, on November 2, 1906, is recorded in the Clerk of Court's Office for Florence County, South Carolina, in Plat Book B, at page 181, under Foster (F. M.) Lynch's name. The Frazier Miles tract of land adjoins and is just south of the Steele tract of land, which said tract was conveyed to Troy J. Lynch by J. C. Lynch, as is above recited. The Frazier Miles tract of land, containing 105½ acres, is the northern portion of the tract of 519½ acres conveyed by J. C. Lynch to F. M. Lynch. Therefore, the northern boundary of the F. M. Lynch 519½-acre tract is the southern boundary of the 99-acre Steele tract of land, conveyed by J. C. Lynch to Troy J. Lynch. In the deed of J. C. Lynch to Troy J. Lynch, conveying the Steele tract of land, it is recited that such tract is bounded on the "South by lands of F. M. Lynch." We point out that there was no plat to the Steele tract of land, but on December 14, 1955, a survey thereof was made by Ebert E. Floyd, a land surveyor. Subsequently, a plat was made by this surveyor. He testified that he had the benefit of the plat of the Frazier Miles tract of land, and the plat of the 519½-acre tract. This surveyor established the line between the land of the respondent and the appellants according to the Frazier Miles plat and the plat of the 519½ acres, the northern line of both plats being the same. The plats of the Frazier Miles tract of land, the 519½-acre tract of land, and of the Steele tract of land were all offered in evidence.

The appellants offered as a witness A. L. Ervin, a Civil Engineer. He testified that he had made a plat of the disputed tract of land containing 4.82 acres. He testified that the northern boundary of the 519½-acre tract was the same as the northern boundary of the Frazier Miles tract of land. He admitted that the northern boundary line of the 519½-acre tract is the southern boundary line of the Steele tract, according to the Frazier Miles plat and the E. J. Smith plat of the 519½-acre tract. He also admitted that he placed a

corner and ran the lines where the appellant Foster M. (Mc-Ghan) Lynch, Jr. told him to place them. Typical of his testimony is the following:

"Q. You ran a line where Mr. McGhan Lynch told you to run it? A. That is right."

\* \* \*

"Q. The reason you put a corner there was because Mr. McGhan Lynch told you to put a corner? A. That is right."

\* \* \*

"Q. If you were given that deed that you just read and given this plat and told to go out and locate that land, this whole 519½ acres of land, and you didn't have McGhan Lynch with you, and told to go out and locate that tract of land, would you have put that tract of land, in locating this tract of land by that plat, would you have put that 4.82 acres on your plat? A. No, sir.

"Q. The only reason you put it on there, as you testified to, was because McGhan Lynch told you to? A. Yes, sir."

This witness admitted that the lines and corners established by the Floyd survey were correct. He was asked certain questions thereabout, and these questions and the answers of the witness are as follows:

"Q. Isn't Mr. Floyd's line correct with the Frazier Miles plat and the T. J. Smith plat? A. Yes, sir.

"Q. You ran the lines and found no difficulty? A. I found all the corners.

"Q. Whether any old corners, you found the line that verified it? A. I checked his lines and did not find anything wrong with them.

"Q. You found his lines were the same lines as shown by the Frazier Miles plat and as shown by the E. J. Smith plat? A. Yes."

In an action of trespass to try title, the plaintiff, in proving title, need not go beyond a source from which both the defendant and plaintiff claim to derive

title. *Martin v. Ranlett,* 39 S. C. L. 541, 5 Rich. L. 541, 57 Am. Dec. 770; *Geiger v. Kaigler,* 15 S. C. 262; *Smythe v. Tolbert,* 22 S. C. 133; *Bradley v. Drayton,* 48 S. C. 234, 26 S. E. 613; *Thomas v. Dempsey,* 53 S. C. 216, 31 S. E. 231. In the instant case, the respondent and the appellants both claim from J. C. Lynch.

It has also been held that in an action of trespass to try title, the plaintiff must recover on the strength of his own title. *Warnock v. Wightman,* 3 S. C. L. 331, 1 Brev. 331; *Haughabaugh v. Honald,* 5 S. C. L. 97, 3 Brev. 97, 5 Am. Dec. 548; *Mazyck v. Birt,* 4 S. C. L. 155, 2 Brev. 155.

The trial Judge held and charged the jury that the respondent had established paper or record title to the disputed area, which was a part of the Steele land. The appellants assert that this was error. It is clear that the respondent had a life estate in the Steele tract of land containing 99 acres. This was established by the deed from J. C. Lynch to Troy J. Lynch, and the Will of the said Troy J. Lynch, together with the plat prepared by the surveyor, Ebert E. Floyd. This evidence clearly placed the disputed tract within the paper title to the Steele tract. The deed to F. M. Lynch, the appellants' ancestor, conveyed 519½ acres as is represented upon a plat of the same made by E. J. Smith, referred to in said deed. The appellants are bound by this plat so far as record title to the land is concerned, because they admit that the Smith plat does not include the disputed area. We think that under the evidence the trial Judge was correct in holding, as a matter of law, that the record title shows a life estate in the respondent to the Steele tract of land. Where a person proves legal title to real property, the person so proving the legal title is presumed to have been in possession of the land within ten years. Section 10-2421, 1952 Code of Laws of South Carolina; *Love v. Turner,* 71 S. C. 322, 51 S. E. 101; *Stokes et al. v. Murray et al.,* 102 S. C. 395, 87 S. E. 71.

The appellants assert error on the part of the trial Judge in failing to direct a verdict in their favor based upon the defense of adverse possession, and Section 10-124 of the 1952 Code of Laws of South Carolina. By this defense, they assert that they are entitled to be declared owners of the disputed area containing 4.82 acres.

The respondent had, by the deeds in her chain of title, the Will of her husband, and the plats, shown paper or record title in herself to a life estate in the Steele lands, of which the disputed area was a part. Possession is presumed to follow such title and the burden is on the appellants to prove all the facts necessary to establish adverse possession. *Love v. Turner,* 71 S. C. 322, 51 S. E. 101; *Knight et al. v. Hilton et al.,* 224 S. C. 452, 79 S. E. (2d) 871; *Gregg v. Moore,* 226 S. C. 366, 85 S. E. (2d) 279, 281. In the last cited case, this Court said that the burden of proof of adverse possession is on the party relying thereon, and held:

"In order to constitute adverse possession, which results in obtaining title to property, the possession must be actual, open, notorious, hostile, continuous and exclusive for the whole statutory period. It may be stated as a general rule that claimant's possession must be such as to indicate his exclusive ownership of the property. Not only must his possession be without subserviency to, or recognition of, the title of the true owner, but it must be hostile thereto and to the whole world. 1 Am. Jur., Adverse Possession, Section 130."

In the case of *Knight et al. v. Hilton et al., supra* [224 S. C. 452, 79 S. E. (2d) 873], this Court said:

"* * * 'The mere possession of land does not in and of itself show hostility to the owner thereof. Indeed, there is every presumption that such an occupancy is in subordination to the legal title.' 1 Am. Jur., Adverse Possession, Section 138. Among other elements which it is necessary for respondent to prove is that any possession on the part of her husband was hostile from its inception. *Weston v. Morgan, supra,* 162 S. C. 177, 160 S. E. 436. In determining what

amounts to hostility, the relation which the party claiming adverse possession occupies with reference to the owner is important. 1 Am. Jur., page 873. As a general rule, the law presumes that the exclusive possession of land by one who is a stranger to the holder of the legal title is adverse. *Knotts v. Joiner,* 217 S. C. 99, 59 S. E. (2d) 850. But the family or other relation may be such as not to create such presumption. 2 C. J. S., Adverse Possession, § 216(b). In *Whitaker v. Jeffcoat,* 128 S. C. 404, 122 S. E. 495, 496, Mr. Justice Cothran stated that where one seeks to acquire title by adverse possession against his brothers and sisters, such a claim should not be sustained 'except upon a clear preponderance of the evidence.' "

There was testimony in behalf of the appellants that the timber was cut from the disputed area in 1926, and that the land was completely cleared by 1936 for F. M. Lynch. There was testimony that the area was used for tobacco beds. The appellants produced witnesses as to the clearing of the land by one Shealy, which was finished in 1936. Another witness for the appellants testified that he broke up the land for farming in 1944 and 1947. Others testified as to farming as tenants of F. M. Lynch in 1945 and 1947. There was testimony in behalf of the respondent that the disputed area was cleared in 1948 by a man named Boulware. There was also testimony from which it could be concluded that the appellants occupied the land in dispute under the mistaken belief that it was a part of the 519½-acre tract. McGhan Lynch, a son of F. M. Lynch, testified as follows:

"Q. You certainly would not think about taking anybody's land without having title to it? A. I would want what was mine.

"Q. You wouldn't take anybody's land, if you did not have title? A. No, sir.

"Q. If you occupy any land, you occupy it under the belief that you had title to it? A. What was my daddy's I would know he would want it.

"Q. You occupy it under the belief that you had title? That you had title to it through your father? A. I operated it because I know my granddaddy gave it to us.

"Q. You wouldn't intentionally take any land that belonged to Mrs. Esther Lynch? A. No, sir; I wouldn't take it, but I would want what was mine."

\* \* \*

"Q. Therefore, your occupany was under the belief your father had title for it from his father, and you had title to it through your father—that is the truth? A. I know that land belonged to my daddy."

This same witness testified that the appellants were not claiming the disputed area by reason of the deed made by J. C. Lynch to F. M. Lynch conveying the 519½-acre tract This witness admitted that F. M. Lynch did not get any other land from J. C. Lynch involving the disputed land, other than that contained in the deed above referred to. At one point in his testimony he said he didn't know whether the appellants were claiming the land under the deed from J. C. Lynch. At another time he testified, in answer to the question of whether the appellants were claiming under the deed from J. C. Lynch to F. M. Lynch, "I suppose so." He was asked if the appellants were claiming the disputed area under any deed, and his reply was, "I couldn't tell you; I imagine there is a deed." He was asked whether they were claiming under any deed, and his answer was, "Yes, sir; I imagine so."

We think the trial Judge was correct in submitting to the jury for their determination the character of the possession of the disputed area by the appellants. It was for the jury to determine whether the appellants had held the land adversely and hostile to the respondent. In the case of *Lyles v. Fellers,* 138 S. C. 31, 136 S. E. 13, 17, this Court said:

"A plaintiff claiming title by adverse possession must show the extent of his possession. *Cantey v. Platt,* 2 Mc-

Cord, 260. The burden of proof of adverse possession is on the one relying thereon. *Gourdine v. Fludd,* Harp., 232.

"It may be laid down as a universal truth that the law always considers the real owner in possession, except where the property is held adversely to him. *Brooks v. Penn,* 2 Strob. Eq. 113. The character of the possession is a question for the jury. *Cantey v. Platt,* 2 McCord, 260; *Hill v. Saunders,* 6 Rich., 62; *Abel v. Hutto,* 8 Rich., 42. Where one claims title to lands by adverse possession, the question whether such possession is, in fact, adverse is for the determination of the jury. *Harrington v. Wilkins,* 2 McCord, 289."

We have repeatedly held that ordinarily the question of adverse possession is one of fact for the jury and only becomes one of law for the Court when the evidence is undisputed and susceptible of but one inference. *McIntosh et al. v. Kolb et al.,* 112 S. C. 1, 99 S. E. 356.

We deem it unnecessary to further recite a detailed summary of the testimony. We have carefully reviewed such and conclude that the testimony presented a jury issue as to whether or not the appellants had, by a preponderance of the evidence, established their defense of adverse possession. We think the trial Judge was correct in holding that there was a jury question presented by the evidence as to this issue.

The trial Judge charged the jury that where a person occupies a piece of land under the mistaken belief that it is his land, with no intent to claim as his own that which does not lawfully belong to him, but only intending to claim to the true line wherever it may be, then any such land so held is not held adversely. The appellants attempted to establish title by offering proof that the lines on the Smith plat putting the disputed area in the Steele tract was a mistake on the surveyor's part, and that the true line was located where the appellants had their surveyor place the lines at the instruction of McGhan Lynch. In the case of *Ousts v. McKnight,* 114 S. C. 303, 103 S. E. 561, 562, adjoining land owners

went into possession in accordance with a plat which set off to the litigants, in a partition suit, 500 acres each; but in surveying the line between the two tracts, one of the parties was, by error, given 575 acres and the other 425 acres. Deeds were made carrying the division into effect. The action was brought to remedy the mistake and the defense was that the defendant had acquired title to the excess acreage by adverse possession. The Court held that it would not apply the statute of limitations, and said:

"The defendant in effect admits that there was a mistake in running the line on the ground, for he testified that he only knew that a mistake had been made in running the line on the ground a year before the action was brought, and that up to that time he had been under the impression that there had been a fair and equal division of 500 acres to the side. That amounts to saying that he was on the plaintiff's land, but did not know it, and did not intend to be there.

"Adverse possession is hostile possession, and hostile possession is possession with intention to dispossess the owner. 3 Washburn (4th Ed.) p. 129. If the statute does not avail the defendant, then he must, of course, now do that which he and the plaintiff first intended to do; that is to say, fix on the ground the line as it was fixed in the Rhodes plat."

We think that the occupancy of land beyond the true boundary line, by an encroaching owner, does not form a basis for adverse possession, unless the encroachment is made with an intention to claim and hold adversely. Where one is in the possession of land up to a supposed line intends to claim only to the true line, his possession is not hostile and will not ripen into title. *Cf.* 2 C. J. S., Adverse Possession, § 84, Page 632.

Where a deed describes land as is shown on a certain plat, such plat becomes a part of the deed. *Klapman v. Hook et al.,* 206 S. C. 51, 32 S. E. (2d) 882; *Holly Hill Lumber Co., Inc. v. Grooms et al.,* 198 S. C. 118, 16 S. E. (2d) 816. The surveyors for the parties to this

action agree that according to the Smith plat the disputed area was not conveyed to F. M. Lynch by J. C. Lynch as a part of the 519½-acre tract. The appellants, therefore, must rely upon their title to the disputed area by adverse possession.

The trial Judge charged the jury that if adjoining land owners occupy their respective premises up to a certain line which they recognize as the boundary line between the tracts, that they are precluded from claiming the line is not the true line between their respective tracts of land. *Klapman v. Hook et al., supra; Richardson v. Register,* 227 S. C. 81, 87 S. E. (2d) 40. It is well settled that a boundary line dividing the land of adjoining owners may be established by a parol agreement of such owners, and such becomes conclusive against the owners and those claiming under them. *Richardson v. Register, supra.* It was for the jury to determine, in this case, whether any boundary lines had been established pursuant to a parol agreement.

We think that the learned Circuit Judge was correct in submitting to the jury the issues made by the pleadings and the testimony. The evidence was in dispute and more than one inference could be drawn therefrom. These questions were for the determination of the jury.

The appellants charge the trial Judge with error in refusing to permit testimony that the boundary line as claimed by the respondent, if projected, would have cut off land admittedly owned by the appellants. McGhan Lynch testified that he was present when the surveyor Smith ran the old Frazier Miles line and such was not followed on the ground according to the plat, but when the surveyor got to an old ditch he turned and went to an old pond, then to a pine tree on a public road. The appellants claim, in view of this testimony, that the old line of the Frazier Miles plat was not followed in marking the boundary between the properties. The respondent claims that a line marked A-C-D-Y, on the Ervin plat, is the boundary of the Steele tract, while the appellants claim a line marked A-B-C-2, so as to include

the disputed area of 4.82 acres, is the correct line of the Frazier Miles tract. The appellants assert that they should have been allowed the question about a line described as D-E-M, which is the line between the Frazier Miles tract and the Jordan tract of land, which said Jordan tract was conveyed by J. C. Lynch to Troy J. Lynch, along with the Steele tract. This line, according to the admission of the respondent, had no relevancy with reference to the disputed area, but even so, the appellants were allowed to ask the qustions they desired concerning it. Troy J. Lynch was asked, "Is it true that your father and Mr. Foster Lynch never recognized the Frazier Miles plat as the line between the two of them?"; and he answered, "That is not true." He was then asked two questions: "Are you contending that the Frazier Miles line as laid on the plat is the true line dividing all the property between your father's property and the Foster Lynch property?" and "Did he recognize the Frazier Miles line shown on the plat as the dividing line between the Foster Lynch property and the Troy J. Lynch property, where the two are contiguous?" Objection of the respondent to these questions was sustained by the trial Judge. A review of the record shows that the surveyor for the appellants was allowrd to testify as to the line between the Jordan tract and the Frazier Miles tract. The appellants were allowed to ask all the questions they desired regarding the boundary they claimed and the extension of it to the north as far as anyone claimed, which was the full and entire disputed boundary between the parties as contended for by the appellants. The boundary line between the Jordan tract and the Frazier Miles tract could have no probative value as to what was the boundary line between the Steele tract and the Frazier Miles tract of land.

The surveyor Ervin, a witness for the appellants, on cross examination, gave the following testimony:

"Q. On any plat anywhere, did you find any evidence of any corner at C-2? A. No, there was not any single marks.

"Q. Did you find any surveyor's marks of any kind there showing it was a land mark? A. Not on the entire line.

"Q. You found nothing to support the line that you ran from A to B to C? (C-2) A. I did not find any surveyor's marks, none whatever.

"Q. Found no plats to support it? A. That is right.

"Q. The plat that you did have, this plat that Mr. Lynch showed you? A. I wasn't trying to survey that piece of land. I was trying to survey the place Mr. Foster Lynch claimed.

"Q. Mr. Foster Lynch wasn't there? A. I beg your pardon—I am talking about this Lynch.

"Q. You ran a line where Mr. McGhan Lynch told you to run it? A. That is right."

We think the trial Judge was correct in excluding the answers to the two questions heretofore quoted. It was not a question to be determined in this case as to whether the Frazier Miles line was the true line "dividing all the property" between the tracts of land. The sole question for determination was what was the true boundary line between the parties to this action as to the disputed area. The fact that there was a dispute concerning the line at some other point, which was not here involved, could have no relevancy to the issue here involved.

The exceptions of the appellants are overruled and the judgment of the lower Court is affirmed.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.