17735

Carl W. MULLIS, Respondent, v. Annie Burns WINCHESTER *et al.*,
Appellants
(118 S. E. (2d) 61)

*Messrs. Bell & Bell,* of Lancaster, and *Henry Hall Wilson,* of Monroe, N. C., *for Appellants,*

*Messrs. Richards, Caskey & Richards,* of Lancaster, *for Respondents,*

January 12, 1961.

Moss, Justice.

Carl W. Mullis, the respondent herein, instituted this action on March 21, 1957, pursuant to Sections 65-3301 - 65-3306, of the 1952 Code of Laws of South Carolina, to remove a cloud on and quiet title to a tract of land, described in the complaint as containing 310 acres, more or less. The pleadings admit that prior to September 17, 1931, E. C. Winchester had a good fee simple title to this tract of land and that on said date he conveyed same to one R. H. Burns. The said deed is of record in the office of the Clerk of Court for Lancaster County, South Carolina, in Deed Book D, at page 36. It further appears that E. C. Winchester died intestate in the year 1936 and that R. H. Burns died testate. The appellants in this action are either the heirs at law of E. C. Winchester or the devisees of R. H. Burns. It also appears that the taxes on the aforesaid tract of land were not paid and that the sheriff of Lancaster County, South Carolina, pursuant to a tax execution, issued against Mrs. E. C. Winchester, levied upon and sold the said tract of land to one John S. Chonis. The defaulting taxpayer having failed to redeem said real estate, the sheriff of Lancaster County conveyed the said tract to John S. Chonis, which said deed is of record in the Clerk of Court's office for Lancaster County, South Carolina, in Deed Book I-3, at page 168. It further appears that John S. Chonis did, by deed dated December 14, 1943, for a consideration of $8,500.00, convey the said 310 acre tract to Carl W. Mullis, the respondent herein, and this deed was recorded in the office of the Clerk of Court for Lancaster County, South Carolina, on January 3, 1944, in Deed Book J-3, at page 445. The complaint also alleges that the respondent had been in actual, open, hostile, con-

tinuous, exclusive and notorious possession of the said tract of land since December 14, 1943, when he purchased same as aforesaid. The answer of the appellants, in so far as this appeal is concerned, denied the allegation of adverse possession contained in the complaint.

This case came on for trial before the Honorable George T. Gregory, Jr., Judge of the Sixth Circuit, and a jury, on May 12, 1958. It was stipulated that the respondent relied entirely upon adverse possession under color of title. It was further admitted that the tax deed heretofore referred to was invalid. It was agreed also that the only issue for trial was the question of whether the respondent had acquired title to the property in question by adverse possession.

At the close of the testimony in behalf of the respondent, the appellants made a motion for a nonsuit, which motion was refused by the trial Judge. Thereafter, the appellants announced that they would present no testimony in their behalf. The respondent and the appellants then made a motion for a directed verdict, which said motions were refused. The Court submitted to the jury the single question of whether the respondent acquired title to the aforesaid tract of land by exercising actual, open, notorious, hostile and adverse possession of said property, exclusively and continuously for a period of ten years or more, prior to the commencement of the action. The jury answered this question in favor of the appellants. Thereupon, the respondent moved for judgment *non obstante veredicto* and on January 18, 1960, by order, the motion was granted, and it was adjudged that the respondent had acquired title to the subject premises by adverse possession. The sole question for determination upon this appeal is whether the respondent established title to the property in question by adverse possession. This question, of course, embraces the further question of whether there was error on the part of the trial Judge in setting aside the verdict of the jury, which was in favor of the appellants, and granting a judgment in favor of the respondent *non obstante veredicto*.

In order to constitute adverse possession, which results in obtaining title to property, the possession must be actual, open, notorious, hostile, continuous and exclusive for the whole statutory period. It may be stated as a general rule that claimant's possession must be such as to indicate his exclusive ownership of the property. Not only must his possession be without subserviency to, or recognition of, the title of the true owner, but it must be hostile thereto and to the whole world. 1 Am. Jur., Adverse Possession, Section 130. *Gregg et al. v. Moore,* 226 S. C. 366, 85 S. E. (2d) 279; and *Lynch v. Lynch,* 236 S. C. 612, 115 S. E. (2d) 301.

The respondent alleged in his complaint that he acquired title to the premises in question by adverse possession. We have held in numerous cases that the burden of proof of adverse possession is on the party relying thereon. *Lynch v. Lynch, supra.* We have also held that ordinarily the question of adverse possession is one of fact for the jury and only becomes one of law for the Court when the evidence is undisputed and susceptible of but one inference. *McIntosh et al. v. Kolb et al.,* 112 S. C. 1, 99 S. E. 356; *Atlantic Coast Line R. Co. v. Searson,* 137 S. C. 468, 135 S. E. 567; and *Lynch v. Lynch, supra.*

The issue of title by adverse possession being one of law, our factual review of it is limited to determination of whether there was any evidence reasonably sustaining the verdict in the lower Court. *Fogle v. Void,* 223 S. C. 83, 74 S. E. (2d) 358; *Phillips v. DuBose,* 223 S. C. 224, 75 S. E. (2d) 56; and *Seagle et al. v. Montgomery et al.,* 227 S. C. 436, 88 S. E. (2d) 357.

The deed of John Chonis to the respondent constituted color of title. This deed contains a minute and definite description of the 310 acre tract of land and there is no doubt as to the identity of the tract of land conveyed. In the case of *Graniteville Co. v. Williams et al.,* 209 S. C. 112, 39 S. E. (2d) 202, 207, it was said:

"Color of title means 'any semblance of title by which the extent of a man's possession can be ascertained'. *Turpin v. Brannon,* 3 McCord, 261. It 'is anything which shows the extent of occupant's claim'. *Sprott et al. v. Sprott et al.,* 114 S. C. 62, 96 S. E. 617. 'The object of color of title is not to pass title. In that case it would be title, not color of title. The only office of color of title is to define the extent of the claim and to extend the possession beyond the actual occupancy to the whole property described in the paper. * * * It is by no means necessary that the paper should be in the form of a deed. A bond or even a receipt would be sufficient'. *Fore v. Berry,* 94 S. C. 71, 78 S. E. 706, 709, Ann. Cas. 1915A, 955. Also, see *Gray v. Bates,* 3 Strob. 498. Manifestly, an instrument in order to constitute color of title need not be valid as a muniment of title. The extent of the occupant's claim founded on an instrument of writing is not dependent upon the validity of such instrument. *Frady v. Ivester,* 129 S. C. 536, 125 S. E. 134. A deed may be color of title although the grantor was without interest or title in the land conveyed. 'There is a material difference between proving a deed as a part of a chain of title and introducing a paper to show the extent of the party's possession'. *Kennedy v. Kennedy,* 86 S. C. 483, 68 S. E. 664, 669."

Hence, when one enters upon land, under color of title, his actual possession of a portion of the property will be constructively extended to the boundaries defined by his color of title. *Haithcock v. Haithcock,* 123 S. C. 61, 115 S. E. 727; *Kennedy v. Kennedy,* 86 S. C. 483, 68 S. E. 664.

It is provided in Section 10-2422, of the 1952 Code of Laws, as follows:

"Whenever it shall appear (1) that the occupant or those under whom he claims entered into the possession of premises under claim of title, exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question or upon the decree of

judgment of a competent court and (2) that there has been a continued occupation and possession of the premises, or of some part of such premises, included in such instrument, decree or judgment under such claim for ten years, the premises so included shall be deemed to have been held adversely, except that when the premises so included consist of a tract divided into lots the possession of one lot shall not be deemed a possession of any other lot of the same tract."

Section 10-2423 of the 1952 Code of Laws, provides:

"For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument or a judgment or decree, land shall be deemed to have been possessed and occupied in the following cases:

"(1) When it has been usually cultivated or improved;

"(2) When it has been protected by a substantial enclosure;

"(3) When, although not enclosed, it has been used for the supply of fuel or of fencing timber, for the purposes of husbandry or for the ordinary use of the occupant; and

"(4) When a known farm or a single lot has been partly improved the portion of such farm or lot that may have been left not cleared or not enclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated."

Carl W. Mullis, the respondent herein, owns and operates the Mullis Lumber Company in Lancaster, South Carolina. It was testified that in the course of his business he purchased tracts of land in order to get the timber therefrom and for the future cutting of timber growth thereon. It was further testified that of all the numerous tracts of land purchased by the respondent, all were bought for the purpose of cutting timber therefrom and growing timber thereon, and as to the tract of land here involved, it was used solely for that purpose. The respondent testified

that in 1943 when he purchased the 310 acre tract of land, which was during the second World War, he was selling lumber to the government and was trying to keep up his timber reserves by buying as much timber as he was cutting. He found out that the tract of land here involved was for sale and he had the timber thereon cruised and, thereafter, John Chonis was contacted and the respondent succeeded in buying the tract of land from him for $8,500.00. Chonis executed and delivered to the respondent a deed for said tract of land. Shortly thereafter, Mrs. E. C. Winchester, one of the appellants, was contacted by a representative of the respondent and she was advised that the respondent had purchased the land and desired to obtain from her the plat thereof which was in her possession. She delivered the plat to a representative of the respondent for $10.00. She did not claim that she and the other appellants owned this tract of land at such time. It then appears that the respondent, with the help of the adjoining landowners, had this tract of land surveyed. Thereafter, the time of which is not definitely fixed in the testimony, the respondent cut all merchantable timber thereon. He cut trees with a diameter greater than ten to twelve inches. The cutting was done by a crew of eight to ten men and the timber cut from said tract was hauled therefrom by three trucks which used woods roads upon said land. The testimony is undisputed that the respondent cut all of the merchantable timber up to the full extent of the boundaries of said tract of land. It was further testified that the best use of this land was for growing timber. The testimony is undisputed that the respondent followed the same cutting practice on this tract as he did on other similar tracts of land owned by him. He testified that he cut infrequently because he considered it good forestry practice to cut only the larger trees. There is testimony that there was a second cutting of timber from this tract of land but such took place after the institution of this action. An estimate of the timber cut from the premises ranges from two hundred thousand to one-half million feet. The testimony is undisputed that the respondent

paid all taxes, in his own name, levied and assessed by the County of Lancaster against this tract of land from the year 1944 until the trial of this case. Adjoining landowners and people living in the community testified in behalf of the respondent and corroborated his testimony of the adverse nature of his possession. They also testified that the people in the community considered the property as belonging to the respondent. They testified as to helping the respondent survey the tract of land in question. These same witnesses testified that the tract in question consisted of hilly land and timber growing was the best use to which it could be put. There is testimony that the limbs and tree tops, where such could be done, were sold as pulp wood. All of the foregoing testimony is undisputed, the appellants having offered no evidence.

It is the position of the appellants that the testimony relied on to establish adverse possession proves no continuous use or acts of trespass but only occasional cutting of timber and they assert that this is not sufficient to establish the requisite continuity of possession.

It is true that possession of land to give title by adverse possession must be continuous for the statutory period of ten years. *Glenn v. Walker,* 113 S. C. 1, 100 S. E. 706. In the case of *Cathcart v. Matthews et al.,* 105 S. C. 329, 89 S. E. 1021, 1025, this Court said:

"The rule requiring continuity of possession does not mean that the person in possession, his tenant or agent, must be actually on the land during the whole of the statutory period. Actual possession, once taken, will continue, though the party taking such possession should not continue to rest with his foot upon the soil, until he be disseised, or until he do some act which amounts to a voluntary abandonment of the possession. *Grimke v. Brandon* [10 S. C. L.], 1 Nott & McC. 356; *Cleveland v. Jones,* reported in a note in [34 S. C. L.], 3 Strob. 479; *Wilson v. McLenaghan* [16 S. C. Eq.], McMul. Eq. 35; *Mahoney v. [Southern] Ry.,* [82 S. C. 215, 64 S. E. 228]. * * *"

It is, of course, the general rule that in order for adverse possession to ripen into title, it must be continuous and uninterrupted for the full statutory period. The moment the possession is broken it ceases to be effectual because the law immediately restores the constructive possession of the owner. But in determining when possession is broken, the nature and location of the land should be considered and whether the use to which the same has been put comports with the usual management of such property. 76 A. L. R., at page 1492.

It has been held that occasional entries on land to cut a small amount of timber do not constitute a sufficiently continuous use to establish adverse possession. Such was the case of *Bailey et al. v. Irby et al.,* 11 S. C. L. (2 Nott & McC.) 343, where it was held that there was no continuity of possession "with him who enters only occasionally; he commits a petty trespass and disappears without scarcely leaving a mark behind", or where "it may be done so secretly as to elude detection; and it would be monstrous to allow one man to filch away the land of his neighbor without the possibility of guarding himself against it."

Acts of adverse possession, or acts of ownership, with regard to open, wild, unfenced lands, lands not capable of cultivation, are only required to be exercised in such way and in such manner as is consistent with the use to which the lands may be put and the situation of the property admits of without actual residence or occupancy. *Cf. D. W. Alderman & Sons Co. v. McKnight,* 95 S. C. 245, 78 S. E. 982.

In 1 Am. Jur., Adverse Possession, Section 131, at page 866, it is said:

"From what has been stated heretofore, it is evident that in determining what will amount to an actual possession of land, considerable importance must be attached to its nature and to the uses to which it can be applied, or to which the claimant may choose to apply it. What is adverse possession

is one thing in a populous country, another thing in a sparsely settled one, and still a different thing in a town or village. * * * As a general rule it will be sufficient if the land is so used by the adverse claimant as to apprise the community in its locality that it is in his exclusive use and enjoyment, and to put the owner on inquiry as to the nature and extent of the invasion of his rights; and this is especially true where the property is so situated as not to admit of permanent improvement. In such cases, if the possession comports with the usual management of similar lands by their owners, it will be sufficient. Neither actual occupation, cultivation, nor residence is necessary where neither the situation of the property nor the use to which it is adapted or applied admits of, or requires, such evidences of ownership."

In the case of *Neilson v. Haas,* La. App., 199 So. 202, 203, it was held that possession during which all merchantable timber is cut is notice to the world that the person in possession claims the land and has a right of possession.

We think the trial Judge was correct in concluding that the acts of adverse possession by the respondent were sufficient to establish requisite continuity of possession for the statutory period of ten years, particularly in view of the use to which this tract of land could be put and the situation of the property. The respondent entered upon this land under color of title and possessed and occupied same for his ordinary use in obtaining timber therefrom and growing timber thereon. Section 10-2423(3), 1952 Code of Laws of South Carolina.

We likewise think that the trial Judge was correct in concluding that the only inference to be drawn from the testimony was that the respondent had made a hostile entry upon the lands in question. His occupation was open, notorious, visible and exclusive. In fact, one of the appellants was notified of the purchase of the land and made no claim of title thereto. In determining what amounts to hostility, the relation which the party claiming

adverse possession occupies with reference to the owner is important. As a general rule, the law presumes that the exclusive possession of land by one who is a stranger to the holder of the legal title is adverse. *Knight et al. v. Hilton et al.*, 224 S. C. 452, 79 S. E. (2d) 871. The respondent here was a stranger to the appellants in this case. There can be no question but what the respondent entered into possession of this land with the intention to dispossess the owners thereof.

As we stated in the beginning, this is a case to remove a cloud on and quiet title to the land in question. Such an action could not be maintained by the respondent if he were not in possession of the land at the time of the institution of the action. *Pollitzer v. Beinkempen*, 76 S. C. 517, 57 S. E. 475; *Wilson v. Dove*, 118 S. C. 256, 110 S. E. 390; *Lancaster v. Miller*, 151 S. C. 233, 148 S. E. 371; and *Priester v. Brabham*, 230 S. C. 201, 95 S. E. (2d) 167. If the respondent were not in possession, his remedy would be to bring an action on the law side of the Court to recover possession and thus test the title to the land. We point out that the appellants do not question the right of the respondent to maintain this action. So, it is logical to conclude that the respondent was in possession of the land at the time of the institution of the action.

We conclude that the trial Judge was correct in holding that the respondent had established title to the premises in question by adverse possession. We think that the evidence in this case is undisputed and susceptible of but one inference. It follows that the trial Judge was correct in granting the motion of the respondent for judgment *non obstante veredicto*.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.